## Mentz's Assignee v. Mahoney, et al.

(Decided November 6, 1912.)

### Appeal from Barren Circuit Court.

1. Pleading—Estoppel—Inconsistent State of Facts—Subsequent Action.—A party who sets up one state of facts in a suit is not estopped to set up an inconsistent state of facts in a subsequent suit with one who was not a party to the first action; but his pleading is evidence against him in the second action.

2. Banks—Overdrafts—When Cashier May Maintain Action Against Customer—When a bank cashier suffered a customer to overdraw without authority and the bank repudiated his action, squaring the account of the customer and taking his note for the overdraft, the debt to the bank must be regarded as paid, and the cashier may maintain an action against the customer for the money.

3. Banks—Overdrafts.—Where a bank cashier allows a customer to overdraw without authority, and the bank requires him to make good the overdraft, he is not a volunteer in paying the debt, but is paying his own debt.

McCANDLESS & LARIMORE, H. A. WATKINS and BAIRD & RICHARDSON for appellant.

W. L. PORTER, PORTER & SANDIDGE and McQUOWN & BECKHAM for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Reversing.

On February 16, 1904, the Hart County Mineral & Oil Company, a corporation, made a written contract for the drilling of a well on its lease-hold properties. The contract ran with Ella M. Mahoney, Paul J. Mahoney, E. H. Mentz and Geo. D. Mentz, as the parties of the second part. All the parties signed it. It provided that $600 should be paid when the machinery was on the ground

and the rig was complete, $500 more when the well was seven hundred feet deep, and the balance when the well was finished. The entire cost was $2 per foot and the depth was not to exceed two thousand feet. The work was to begin in ten days and be completed in ninety days thereafter, unavoidable accidents excepted. The outside limit of one hundred days expired on May 26. On May 25th the oil company paid the first $600.00. It never made any other direct payment. The well was drilled the required two thousand feet, though long delayed in completion. This drilling business seems to have been conducted in the name of Ella M. Mahoney.

W. B. Craddock was then president of the oil company. He also was president of the Hart County Deposit Bank & Trust Company. George D. Mentz, was then the treasurer of the oil company. He was also cashier of the bank. He was the brother of E. H. Mentz, and an uncle of Ella M. Mahoney, the daughter of E. H. Mentz.

On March 8, 1904, an account appeared upon the books of the bank in the name of Ella M. Mahoney. It began with an overdraft. It was persistently checked upon until May, 1905 and $5,701.39 had been checked out. Meantime it was credited on May 25, 1904, with the $600.00 named above, leaving an overdraft balance of something over $5,101.39. To cover this overdraft, Geo. D. Mentz, on February 6, 1906, executed his note to the bank for $5,101.39. This note the bank placed to the credit of the Mahoney overdrawn account.

The bank sued George D. Mentz on the note. Among other defenses to this suit in an answer sworn to by him, he said that the note as to him was without consideration; and that it was in reality a debt owing by the oil company. In substance, his position was that there was an agreement or understanding between the bank and the oil company whereby the oil company's obligation to the drillers should be discharged through the Ella M. Mahoney account; that the money from time to time should be checked out in the checks of Ella M. Mahoney, but that the credit was extended to, and the overdraft was the debt of, the oil company; that the account was kept in the name of Ella M. Mahoney only for convenience; that he, George D. Mentz, was not one of the drillers, but was only a surety engaging that the principals in the

drilling contract would faithfully execute it with the oil company. After the bank's action had progressed for a time, George D. Mentz, the defendant in it, on March 28, 1908, executed his deed of general assignment to C. R. Carden, in trust for the benefit of his creditors. On the 2nd day of October, 1908, a judgment was entered in favor of the bank against Mentz upon the note, subject to several credits set out in the judgment. This judgment was entered pursuant to an arrangement made on that day with Mentz in which Carden, as assignee, acquiesced.

On December 3, 1908, C. R. Carden, as assignee of George D. Mentz, brought this action against Mrs. Ella Mahoney, Paul Mahoney, E. H. Mentz, his wife, Mrs. E. H. Mentz, and the four children of Paul and Ella Mahoney, seeking to recover judgment against them for the $5,101.39 and to subject to its payment certain property which he alleged had been conveyed by E. H. Mentz to his wife, M. E. Mentz, and the Mahoneys, under a fraudulent conspiracy between them to cheat, hinder and delay the creditors of M. E. Mentz, including especially the said George D. Mentz and the bank. Plaintiff obtained a general order of attachment against the property of Ella Mahoney upon the allegation that she was a non-resident of the State. In the petition the assignee first set up the oil contract above named. He alleged that Ella Mahoney, Paul J. Mahoney and E. H. Mentz were principals in the drilling contract, and that his assignor, George D. Mentz, was their security. He alleged that the two Mahoneys and E. H. Mentz, in order to carry out their contract, began to execute the checks above named; that George D. Mentz, then cashier of the bank, paid said checks out of the bank's funds and charged the drillers therewith upon the bank's books in an account standing in the name of Ella Mahoney; that these transactions resulted in an overdraft on said account in the sum of $5,101.39; that the said George D. Mentz at the time was a director and cashier of the bank in charge of its funds and business, but being without authority from the bank to pay out its funds on these checks, had been compelled to repay the bank; that by reason of his suretyship on the drilling contract he was compelled to and did pay off the account at said bank for E. H. Mentz, Paul J. Mahoney and Ella Mahoney, on February 3, 1906; that on that day he delivered to the bank his note for the sum of $5,101.39, which note was

accepted by the bank in full satisfaction and settlement of the overdrawn account; that afterward the bank sued the said George D. Mentz and obtained a judment on the note; that by reason of the facts above alleged, the plaintiff, as assignee of George D. Mentz, was entitled to be subrogated to the rights of the bank to recover judgment against E. H. Mentz, Paul and Ella Mahoney, and to subject to its payment the property alleged to have been conveyed away by E. H. Mentz to avoid its subjection to his debts.

The defendants answered with a general denial. They plead certain affirmative matter, much of which need not be noticed. They alleged affirmatively that if Mentz executed the note, he executed it without their knowledge and consent, and voluntarily upon his part. In the fourth paragraph the defendants set up the same state of fact which Mentz himself had set up when sued on the note by the bank, supra, i. e., that the money checked out on the Ella Mahoney account was a loan to the oil company. In the fifth paragraph they plead as an estoppel against Carden, as assignee, the answer of his assignor, filed before the assignment, in the bank suit, supra; wherein he had set up under his oath the extending of the credit by the bank to the oil company under the Ella Mahoney account. Other voluminous pleadings completing the issues were filed, and proof was taken. During the progress of the action, E. H. Mentz, Geo. D. Mentz and Mrs. M. E. Mentz all died, and necessary revivor was had. Upon trial the court dismissed the petition, and the assignee prosecutes this appeal.

We do not agree with the chancellor's finding of fact that the bank account was the oil company's debt. Mrs. Mahoney herself says that she was without knowledge of the alleged arrangement at the bank. She says that she checked out the money after such time as she thought the company had deposited the money; and that as her Uncle George was treasurer of the company and cashier of the bank, she supposed the money was paid there; that she had no conversation or agreement with the oil company people about payment, save as was provided in the written contract. Undoubtedly she may have thought that her uncle was collecting the money from the oil company and depositing it to her credit. He did not meet such an expectation or support such a hope; and the result of her checking was the drillers' overdraft, their using the bank's funds, which they owed to the bank.

Her husband, Paul Mahoney, knows less about it all than she does. At least he tells less. The only knowledge she professed to have of any arrangement between the bank and the oil company for her payment is her in- competent statement of what her husband told her. And her husband says he had no knowledge whatsoever of that which she says he told her. This is all the proof the defendants have of any such arrangement, save the George D. Mentz pleading in the bank's suit. Upon the other side, J. M. Craddock, connected in no way with the litigation, and disqualified from testifying by the death of no one, says that the bank's financial affairs were conducted by a committee of three, of which he was a member; that loans were made through this committee; that they had no knowledge of this overdraft until June, 1905, when a suddenly acquired knowledge of its exist- ence stirred up something of a storm; that when George D. Mentz, the bank cashier, was confronted with it, he said that he had furnished the money, was responsible for it, and good for all his contracts. He later executed his note for it. Craddock said he had no knowledge of the alleged agreement. The secretary of the oil company testified not only to a want of knowledge of any such agreement, but that the oil company had decided not to pay for the drilling; that because of the delay the com- pany had been compelled to renew leases at a large ex- pense which it otherwise could and would have avoided. Craddock testified that George D. Mentz furnished the finance committee from time to time with statements of the bank's overdrafts, but that this one was never em- braced in them. Surely, if there existed the understand- ing between the bank and the oil company this overdraft would have been shown as against the oil company, or against somebody, to be paid by the oil company. The truth is, there is a total failure of proof of any such ar- rangement, save that George D. Mentz's pleadings in the bank's suit. As evidence they do not go far toward over- turning our conclusions.

But, it is insisted that the plaintiff is now estopped by the allegations which Mentz made in that case from showing the real facts in this action. In 11 Amer. & Eng. Enc. of Law, 449, the rule is thus stated:

"While the allegations in the pleadings in one suit are receivable against the party in a subsequent suit be- tween him and a stranger as his solemn admission of the truth of the facts recited, yet the pleading is not ad-

mitted as conclusively establishing the facts alleged therein, but is open to explanation or rebuttal, or may be shown to have been made by mistake.''

The rule is that a party who alleges a fact in one suit is never estopped to show the truth in another suit where the parties are not the same as in the first suit or he was unsuccessful in the former suit. (16 Cyc., 796-800, and cases cited.) In Donophan v. Gill, 1 B. M., 199, and Durrett v. Stewart, 88 Ky., 665, the second case was between the same parties as the first in which the pleading was filed and in which the party had succeeded. Ella Mahoney was not a party to the former suit. That was a suit between the bank and George Mentz. Appellees were not parties to that action and cannot rely on the pleadings filed by Mentz in that action as making out an estoppel here.

It is also insisted that Mentz has not paid the debt and for this reason this action cannot be maintained. The facts as to this are these:

Mentz was cashier of the bank; as such cashier he allowed Ella Mahoney to overdraw her account $5,701.39 without authority. When the bank officials discovered his dereliction which he had concealed from them he said that he was good and that he would make the overdraft good. He thereupon executed his note to the bank which the bank accepted and credited Ella Mahoney's account by the note, thus squaring the account. The prima facie effect of this transaction was that the bank took the note of Mentz in satisfaction of the overdraft of Ella Mahoney. When it discovered that its agent had paid out its money for Ella Mahoney, without authority, it had the right to ratify the act of its agent and look to her for the money. It had also a right to look to its agent for the money and refuse to have anything to do with Ella Mahoney. Its conduct was an election to follow this course for it squared up the Ella Mahoney account on the books and took the note of Mentz for its debt. The note, therefore, operated as a payment to the bank of the debt; Mentz was thereafter the debtor of the bank and Ella Mahoney was his debtor for her account at the bank had been squared. The bank could not ratify in part and disaffirm in part the act of its agent. It elected to disaffirm the whole thansaction and to treat him alone as its debtor. When it did this all the rights which the bank might have otherwise asserted against Ella Mahoney were vested in Mentz for the bank accepted

the note of Mentz in settlement of the Mahoney account. If the bank does not get its money out of Mentz it has no claim, now, against Ella Mahoney and it has, in fact, never asserted any since it squared the account. If Mentz can make his whole debt out of Ella Mahoney the bank cannot complain for it took Mentz's note for the debt and whatever he can make out of Ella Mahoney is his. Under the arrangement between him and the bank she owes him the amount which he allowed her to overdraw at the bank and he can maintain this action to recover it although he has not, in fact, paid the note.

If he, instead of lending her the money from time to time had lent her at one time the $5,101.39, and taken her note for it, and when the officers of the bank had learned of the transaction, they had declined to ratify it, and he had then said that he was good and he would make the money good to the bank, and had executed his note to the bank for the money and the bank had turned over to him her note, would it be doubted that the bank had taken him as its debtor and had declined to take Mrs. Mahoney as its debtor? But this is in substance the transaction that we have; for it is not material that the money was lent in small sums from time to time and not all at once in one sum. Nor is it material that Mentz instead of taking Mrs. Mahoney's note had charged the money to her account in the bank, and had carried it as an overdraft without the knowledge of the officials of the bank who had charge of such matters. If the cashier of a country bank has authority to allow small temporary overdrafts by customers, such an overdraft as this cannot be presumed to be within the authority of a bank cashier under the proof in the record. The bank then thought that Mentz was good and that Mrs. Mahoney was not good. It having elected then to treat Mentz as its debtor and refused to treat Mrs. Mahoney as its debtor, it is not material that it has turned out that Mentz is insolvent. The bank must be held bound by the election it then made.

For the same reason, it cannot be said that Mentz was a volunteer. He was liable to the bank for the money which he had allowed Ella Mahoney to overdraw without authority. Being liable to the bank he had a right to protect himself and his sureties by adjusting the matter with the bank. In so doing he was not a volunteer but was discharging an obligation which he owed. The evidence in the case leaves no doubt in our mind that

Mentz wrongfully and without authority allowed the overdraft on the Ella Mahoney account and it also leaves no doubt in our minds that this was not a debt of the oil company. It is true that the oil company may be indebted in some amount to Ella Mahoney. That question we do not decide for it may be determined in an action between her and the oil company. The oil company did not authorize Mentz to pay the money to Ella Mahoney. He did not pay her the money for the oil company and what may be her rights against the oil company is a matter that cannot be determined in this suit.

There is no competent evidence that Mentz has been paid the debt or that any part of it has been settled. We, therefore, conclude that the chancellor erred in dismissing the plaintiff's petition.

Judgment reversed and cause remanded for a judgment and for further proceedings consistent herewith.