## Wathen, et al. v. Wathen.

(Decided September 26, 1912.)

### Appeal from Marion Circuit Court.

Appeal—Finding of Chancellor—Conflicting Evidence.—Where the evidence in an equitable action is conflicting, and upon a consideration of the whole case the mind is left in doubt, the finding of the chancellor will not be disturbed.

JOHN McCHORD, C. C. BOLDRICK and T. L. EDELEN for appellants.

H. W. RIVES, W. W. SPALDING for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiff, John B. Wathen, brought this action of trespass against R. N. Wathen, Charles Hobert, Sr., and Hans Mueller, partners doing business under the firm name of Wathen, Mueller & Company, to try title to a small tract of land located near the city of Lebanon in Marion County. Issue was joined on the question of title, and the chancellor rendered judgment in favor of the plaintiff. From that judgment the defendants appeal.

The defendants own a tract of land in Marion County about one mile west of Lebanon, between the Louisville & Nashville Railroad and Hardins Creek. Plaintiff owns a tract of farm land fronting on the Lebanon and New Market turnpike road, and extending north to Hardins Creek. Plantiff's land is bounded on the north by Hardins Creek, and the defendants' land on the south by Hardins Creek. The title deeds under which both plaintiff and defendants claim call for Hardins Creek and thence with the meanders thereof. The courses and distances are also given. Three maps are in the record, one prepared by plaintiff's surveyor and the two others by defendants' surveyors, one of which was recently made, while the other was made several months before. Many years ago there was an old rail fence which ran along the north side of Hardins Creek. About the year 1890 this rail fence was removed and a wire fence built in its stead. The testimony of plaintiff and his witnesses is to the effect that this fence

was a boundary line, and was so recognized by the owners of the two tracts of land. The testimony for defendants is that this fence was built merely for the convenience of the owners of the northern tract, to enclose their land and to prevent trespassing. Plaintiff's witnesses testify that the creek has left its old channel and made an entirely new channel. This change was caused by high water in a drain which caused the creek to leave its bed and cut out a new bed, thus leaving on the north side trees and islands which were formerly on the south side. Defendants' witnesss claim that the creek runs now where it always ran, and that the slough or apparent old channel of the creek is simply a former wagon road, now grown up in grass. In the evidence for plaintiffs, there are some circumstances tending to show that the creek left its channel by avulsion. This, it is claimed, is shown by the fact that it formerly ran between an elm and a hackberry, whereas it now runs south of the hackberry, which it would not have done had the creek gradually cut away the opposite bank and that island and trees formerly on the south side are now on the north side of the creek. Plaintiff's witnesses show that plaintiff and those through whom he derived title always claimed to the old division fence, and exercised actual ownership over the land up to the fence. At various times plaintiff repaired the wire fence, sowed the land in grass seed, and on two or three occasions planted a tobacco bed. Defendants contend that these were simply sporadic acts on the part of plaintiff, and were not sufficiently open, notorious and continuous to constitute adverse possession. The son of one of plaintiff's grantors testified that when his father bought plaintiff's land from R. N. Wathen, the latter stated to him that the fence on the north side of the creek was the dividing line. McGrath, a son of a former owner of defendants' land, testified that his father never claimed south of the division fence on the north side of the creek. There is also evidence to the effect that when one of plaintiff's grantors bought R. N. Wathen's land, there was a slaughter house on the north side of the creek from which he regularly collected rent. Defendants claim that this slaughter house, as a matter of fact, was located on the south side of the creek.

We have not attempted to give at length the evidence for each side; the record is very voluminous. We

have carefully read it, however. Upon nearly every point the evidence is conflicting and leaves the mind in doubt. While in an equity case we will give judgment according to the weight of the evidence, and the truth as it shall appear from the whole record, yet when we find evidence as in this case, conflicting, and the questions of fact, by reason thereof, difficult of solution, some reliance should be placed upon the chancellor's acquaintance with the parties and the witnesss, and his consideration of the evidence, and if unconvinced by careful consideration of the record that he has erred to the prejudice of the substantial rights of the appellants or on the whole case there is merely a doubt in our minds as to the correctness of the judgment, it will not be disturbed. Byassee v. Evans, 143 Ky., 415.

Judgment affirmed.