## Potter v. Damron.

(Decided November 15, 1912.)

### Appeal from Pike Circuit Court.

Finding of Chancellor.—A chancellor's finding of fact will not be disturbed where the evidence is conflicting and the mind is left in doubt as to the truth.

J. M. BOWLING for appellant.

BUTLER & MOORE for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

The appellant, Nancy Jane Potter, as the owner of the "Mitchell Clay Patent" containing fifty acres of land, on Elkhorn Creek in Pike County, brought this action to enjoin appellee from further cutting and removing timber therefrom. Appellee answered denying Mrs. Potter's ownership of the land from which the timber was cut and alleged ownership thereof in the Big Sandy Company, from which company he had theretofore bought the timber. The circuit court dismissed plaintiff's petition, and she appeals.

The only question therefore presented by this appeal is, was the timber cut from the "Mitchell Clay Patent?"

By its patent of February 15, 1856, the Commonwealth granted to Mitchell Clay fifty acres of land lying on Elkhorn Creek, near the Cumberland Mountain, in Pike County, and described by metes and bounds; and by mesne conveyances, Mrs. Potter became the owner thereof in 1908. The tract consisted of what is known as wild land, and was never enclosed or occupied in a way that would fix its identity.

There being only one "Mitchell Clay Patent" of 1856, and the issue of ownership, or identity, having been made, the circuit judge ordered the county surveyor to survey and lay off the land as either party might

direct, having due regard for all deeds and other evidences of title that might be produced to him. In obedience to that order, the surveyor made and filed a survey accompanied by an elaborate plat showing that the patent, as laid off at the direction of Mrs. Potter, and known in the record as survey "B," is about 350 yards from survey "A," which is the same patent as laid off at the direction of the defendant. The timber was cut from land partly, or wholly, within survey "B"; no part of it being within survey "A." The Laurel Ridge runs between the two surveys, survey "A" lying north of the Laurel Ridge and nearest to Elkhorn Creek, which is the term of general description used in the patent. Pigeon Roost Valley, a mile wide and two miles long, lies between the Cumberland Mountain and the Laurel Ridge, and is intersected by Pigeon Roost Branch.

It is apparent therefore, if survey "A" properly locates the "Mitchell Clay Patent," appellant must fail in her suit and the judgment of the lower court be affirmed. While the evidence is conflicting and not entirely satisfactory, there are several noticeable features which strongly sustain the ruling of the chancellor that survey "A" correctly locates Mrs. Potter's land. George Steele, who bought the fifty acres from Mitchell Clay in 1889, testified that there was an old field on the tract which had been cleared many years ago by Rural England, and that the fence around it had been burned. The plat shows a field within survey "A," and Steele indentifies it as the field Rural England had cleared. Survey "B" has no field within its boundary. Again, it appears from the testimony of Holly, an engineer of experience, and of Morgan, Childers, and Ramey, the county surveyor, all of whom were present when the surveys were made, that survey "A" more nearly corresponds to the calls and corners called for by the patent; that most of the corner trees called for in the patent were found, and bore old marks, evidently made with an axe or hatchet forty or fifty years ago; while the original objects called for in survey "B" were not found, and that such marks as were found bore all the evidences of having been recently made with a knife. These and other witnesses concur in the opinion that survey "A" represents the location of the "Mitchell Clay Patent." In our opinion, a preponderance of the evidence shows that the correct location of the "Mitchell Clay Patent" which Mrs. Pot-

ter owns, is shown by survey "A," and not by survey "B," as she claims; and as there is no claim the timber in controversy was cut from survey "A," the petition was properly dismissed.

But if there should be any doubt about the correctness of the chancellor's ruling, we would nevertheless feel impelled to affirm his judgment under the well established rule that the chancellor's finding of fact will not be disturbed where the evidence is conflicting and the mind is left in doubt as to the truth. Byasse v. Evans, 143 Ky., 415; Wathen v. Wathen, 149 Ky., 504; Bond v. Bond, 150 Ky., 392.

Judgment affirmed.