## Coburn, et al. v. Coburn, et al.

(Decided March 13, 1914.)

### Appeal from Knott Circuit Court.

Deeds—Cancellation—Mental Incapacity—Finding of Chancellor—Conflicting Evidence.—Where in an action to set aside a deed on the ground of mental incapacity and undue influence, the evidence is conflicting, and upon a consideration of the entire record the mind is left in doubt, and it cannot be said with reasonable certainty that the chancellor has erred, his finding will not be disturbed.

H. T. BAILEY and STEWART & BAILEY for appellants.

SMITH & COMBS for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

By his first wife W. O. Coburn had three children, Martha Coburn, Margaret Turner (formerly Coburn), and J. M. Coburn, who are the plaintiffs in this action. After the death of his first wife he married Mary Sexton. Of this union there were born five children, all of whom were infants when this suit was brought. W. O. Coburn died September 19, 1905. About a week before his death he conveyed the tract of land on which he lived, which was worth about $1,500, to his second wife, Mary Coburn, and her heirs by him. Plaintiffs brought this action to have the deed set aside on the ground of mental incapacity and undue influence. On final hearing the chancellor refused the relief asked, and plaintiffs' petition was dismissed. From that judgment they appeal.

According to the evidence for plaintiffs, the grantor, W. O. Coburn, had an attack of palsy about 12 or 15 years before his death. After that time he was unable to do much physical work. His bodily strength continued to diminish up until the time of his death. Some four or five years before his death he was called as a witness in a case, and stated that some times his mind was all right

and some times it was not, and therefore he did not care to testify. A few witnesses say that in their opinions he did not have sufficient mind to comprehend or understand the nature of the deed which he made. Other witnesses say that when they called to see him he would talk intelligently for a while, and suddenly begin talking about something else. Others say that after discussing certain matters with them he would frequently go off by himself and remain silent. There was also testimony to the effect that Malcolm Sexton, a son of Mary Coburn by a former marriage, paid for writing the deed, and stated that he had gotten the grantor to make the deed. Some of the witnesses say that when they called to see the grantor some three or four days before his death he did not recognize them. Joseph L. Coburn, a brother of the grantor, stated that he was with the grantor four or five times just prior to his death. The grantor seemed to be very weak. For the last seven or eight days before his death the grantor's mind did not seem to be as good as it was before he took sick the last time. On cross-examination he stated that in his opinion up to the time of the last attack his brother had mind sufficient to understand the nature of deeds and contracts. His brother knew him up to the day he died. Several other persons asked his brother if he knew them, and he replied yes. Up to the time of the last attack his brother's mind was like that of an average old man.

The witnesses for the defendants testified that although the grantor was afflicted with nervous disease, and he was feeble in body, his mind was not impaired. On the occasion the deed was written, he notified Malcolm Sexton of his desire to execute it. Malcolm went for a deputy county clerk. When the clerk arrived the grantor was in bed. He assisted those present in giving the clerk a correct description of the land. His mind was clear, and he knew exactly what he wanted to do. The clerk says that Coburn understood the transaction; that he had known Coburn for a number of years, and never at any time saw anything to indicate that he had lost any of his understanding. It is further shown that plaintiffs did not live with the grantor, but had left his home many years before. They came to see him only occasionally. His children by his second wife were all quite young when the deed was made. In the opinion of several witnesses, the grantor had sufficient mental capacity to enable him to appreciate the nature and effect of the transaction.

It will be observed that the evidence in this case is conflicting. Much depends on the credibility of the witnesses. The chancellor, being on the ground and acquainted with the parties and witnesses, is in a better position than we are to determine the weight of the testimony. In such a case, where the evidence is conflicting and upon a consideration of the entire record the mind is left in doubt, and we cannot say with reasonable certainty that the chancellor has erred, it is our rule not to disturb his finding. Wathen v. Wathen, 149 Ky., 504; Potter v. Damron, 150 Ky., 587; Smith v. Rader, 157 Ky., 178.

Judgment affirmed.