## Coffey et al. v. Lair et al.

(Decided Dec. 11, 1934.)

DUNCAN & DUNCAN for appellants.

E. BERTRAM for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

In January, 1928, Burt Williams, and his wife,

Patsy Williams, for a consideration of $25 cash paid, sold and conveyed to the appellees G. C. Lair and R. I. Lair the coal underlying a small tract of land consisting of about 16 acres, situated in Wayne county, Ky. Burt Williams died in May, 1928, about four months after the conveyance, and his wife died in 1932.

In January, 1934, the appellants, children and heirs at law of Burt and Patsy Williams, filed this suit in the Wayne circuit court to cancel the deed on grounds of mental incapacity and inadequacy of consideration.

The appellants charged in their petition, in substance, that Burt and Patsy Williams were old colored people, and, at the time of the execution of the deed, they were aged and infirm and their mental faculties were impaired by reason of their age and physical condition, and they did not know and were not capable of knowing the force and effect of the contract that they signed or its import and meaning, and that the consideration paid was grossly inadequate.

Appellees by their joint answers denied the allegations of mental incapacity of the grantors, and denied that the price paid for the coal was inadequate, and pleaded affirmatively that the grantors were of sound mind at the time of the conveyance, and that the consideration paid was a fair and adequate one. They further pleaded that, since the purchase of the property in question, they had entered upon it and made excavations for coal and had expended large sums of money in locating the coal. The affirmative allegations of the answer were controverted of record, and upon the issues thus joined the proof was taken partly by depositions and partly in open court, and the court entered judgment denying appellants the relief sought and dismissed their petition, and from that judgment this appeal is prosecuted.

The record discloses that these old colored people purchased this tract of land in 1894 and moved onto it and resided thereon with their family until their death on the dates stated above. Several years ago they leased the oil rights on their land and had been receiving royalties therefrom. The evidence is conflicting respecting the negotiations relating to the conveyance in question. The evidence for appellants is to the effect that one of the appellees approached the old man and told him that they would give him $25 for his coal, and

the old man readily accepted. On the other hand, appellees testified that the old man approached them on the subject and offered to sell them the coal before they had mentioned it to him.

Respecting the mental capacity of the old people, it is shown by a number of witnesses for appellants, who were plaintiffs below, that these old people were between 90 and 107 years old at the time of their death. No record of their age was produced nor no one testified to their exact age, but it is apparent that they were near 100 years old at the time of the conveyance in question. It was testified by witnesses for appellants that the old man was in bad health and bad physical condition for some several years previous to his death, and that he was illiterate and could not count money and did not know one bill or coin from another; that his memory was very poor and he would talk about people whom he had known but who had been dead for several years, and spoke of them as though they were living—indicating that he did not remember their death; that he would leave his house to get wood or on other errands, and wander off and stay all day and they would have to go hunt for him and bring him home.

On the other hand, the appellees and other witnesses for them testified that the old people were of average intelligence and were capable of transacting business. Two merchants who resided near the old people testified that they traded with them and they ran accounts at their stores; that they came in and called for what they wanted and it was charged to them, and, when they received their royalty checks for their oils, they came and paid their accounts; that the checks were indorsed, but they did not know who indorsed them; that they took the whole check and gave them back the difference between the check and their accounts and they seemed to understand what amount was due them and raised no question about the change given them. One witness testified that he bought a hog of the old man for the price of a little more than $6, and, not having the exact change, he gave him $7, and the old man gave him back the correct change, indicating that he knew the bills given him and the correct change. The appellees testified that they had known the old colored people for a number of years and they had observed nothing wrong with their minds, and that they were people of average intelligence and were at the time they

purchased the coal. In this they were corroborated by a number of other witnesses of the community who had known the old people for a number of years up to the time of their death.

With reference to the value of the coal, the appellants and a number of other witnesses who testified for them stated that the coal was of a value far in excess of $25, the sum paid for it. It was agreed, however, by the witnesses for both parties that the coal was only about 24 inches thick and difficult to mine. It appears that the old man had leased the coal to some one several years ago and the lessee attempted to locate coal and develop it, but was unable to do so and abandoned the lease. One opening made by the appellees fell in and they were unable to operate it, but finally succeeded in making another opening from which coal is being mined. Appellees testified that they had expended about $700 in opening and developing the coal, and that they had not realized enough from the coal to reimburse them for their expenditures and never would.

Counsel for appellants in his brief concedes that, if the deed were canceled, the appellants should reimburse appellees for their expenditures in opening and developing the coal in so far as it was an improvement of the land, but insist that the amount claimed to have been expended was excessive and unnecessary and appellees would not be entitled to the full amount. He does not indicate, however, just what would be the proper sum. It appears from the evidence as a whole that the quantity and quality of the coal underlying the land was an uncertainty and appellees took their chance on finding coal in mining or commercial quantity, while the grantors likewise took their chance. In view of the small quantity of coal developed on the land and the cost of operating it, it is doubtful that it is or ever will be a paying proposition. The evidence is voluminous, and it would serve no good purpose to give time and space to a detailed resume of the evidence further than above indicated. It is sufficient to say that, if the plaintiffs' evidence were to be believed to the exclusion of the defendants' evidence, the conclusion would be inescapable that plaintiffs would be entitled to the relief sought; but, on the other hand, if defendants' evidence were to be believed to the exclusion of that for the plaintiffs, the conclusion would be to the contrary.

That the grantors were very old people at the time

of the conveyance is not denied. But the law will not presume mental incapacity from old age, of itself, but age will be taken into consideration in connection with other evidence tending to show mental incapacity. Much of the evidence relating to the old man's mental condition is somewhat remote, i. e., not confined to the time the deed was executed; and such evidence as is competent is very conflicting.

The trend of modern opinions of this court is to the effect that it will judge for itself the sufficiency of evidence to support a finding of fact by a chancellor, and, if it is reasonably clear that such finding is contrary to the weight of the evidence, it will be reversed. But a different rule obtains in cases where the evidence is so conflicting and doubtful as to leave reasonable minds in doubt. In such cases the finding of the chancellor will not be disturbed. Coburn et al. v. Coburn et al., 157 Ky. 849, 164 S. W. 105; Smith v. Rader, 157 Ky. 178, 162 S. W. 799; Potter v. Damron, 150 Ky. 587, 150 S. W. 647; Wathen v. Wathen, 149 Ky. 504, 149 S. W. 902.

Upon a careful review of the evidence our conclusion is that this case falls within the rules of the cases supra, and we are unauthorized to disturb the finding of the chancellor.

The judgment is affirmed.