## Bevins v. Damron et al.

(Decided June 7, 1938.)

A. F. CHILDERS for appellant.

STEELE & VANOVER for appellees.

OPINION OF THE COURT BY JUDGE BAIRD—Affirming.

Appelllant, J. Mont Bevins, and appellees, A. R. Damron and Lilly Damron, owned adjoining tracts of land situated in Pike County, Kentucky.

On the 25th day of April, 1934, appellees filed their joint petition in equity in the Pike circuit court alleging that they were the owners and in the actual possession of a tract of land describing it by metes and bounds; that appellant was giving out in word and speech that he had a claim on a part of their land and was thereby casting a cloud upon their title which depreciated the value thereof and deterred prospective purchasers from buying same; that he entered upon their land and tore down and removed a part of their fencing and caused to be exposed their orchard and garden to the public and removed the division line between the two farms. They asked that the cloud be removed and that Bevins be adjudged to have no right, title or interest in the land claimed by him; and, for a permanent injunction restraining and enjoining him from entering upon their land and interfering in any manner with their peaceful possession. Appellant by answer and counter-claim denied the material allegations of their petition, and further, after describing his land by metes and bounds, alleged that he was the owner of a small strip of land that appellees claimed to own along where their land joins "about 30 feet wide at the creek, about 100 feet wide at the public road, and about 400 feet in length;" that appellees were estopped upon certain grounds hereinafter more particularly referred to from claiming the line to be as set out in their petition. Based on the proof and pleading, the chancellor rendered the following judgment:

"It is therefore adjudged by the court that the true line between the parties hereto, beginning at a set stone at Bent Branch indicated by the letter 'A' on the said map; thence running up the hill to a walnut tree; thence continuing up the hill to a hickory corner in old fence line indicated on the Picklesimer map by the letter 'B'.

"It is further adjudged by the court that the defendant and any person acting under him is hereby permanently restrained and enjoined from interfering and molesting the plaintiff in the maintenance of said fence and/or interfering or molesting the plaintiffs and those holding under them in the possession or occupancy of plaintiffs' land below said fence line."

The action involves primarily the location of the true division line between their respective lands. It is practically agreed that more than fifty years before the institution of this action, that Billie Hinkle, the immediate vendor of Bevins, owned the farm now owned by him; and that Dan Harrison, the remote grantor of appellees, owned the land now owned by the Damrons; that while the farms were owned by them, the dividing line between the two farms was agreed upon and established, and a marked stone planted showing the true corner of the two farms. A fence was built by them along the agreed line and maintained by their successors in title to the institution of this action. Appellees contend that about ten years before this action was instituted, appellant wrongfully mutilated and destroyed the marked corner stone that was planted when the agreement between Hinkle and Harrison was made and wrongfully planted another stone further down the public road. Bevins is now claiming that the true line between the farms begins on that stone; and, that the line running from that stone across appellees' line, includes the strip of land now claimed by him (appellant). Appellant denied that the corner stone was mutilated or changed by him or that it had ever been changed, wrongfully or at all, but it is now and has been maintained at the same place, where it was planted by Hinkle and Harrison. Appellant by his counter-action, further alleged that appellees were estopped to claim the division line to be other than the one claimed by him, because in an action instituted in the Pike Circuit Court against him by Mrs. B. L. Curry et al., a daughter of Dan Harrison who after his death obtained title to the land, under the laws of inheritance, that is now owned by appellees; that by the suit instituted against this appellant claiming the line between her (Mrs. Curry et al.) and that of appellant was adjudicated to be the same line that was established by the agreement of Hinkle and Harrison; and that the land now owned

by appellees was formerly owned by the Currys et al., who sold it to W. M. Stanley, the vendor of appellees. But it was admitted in appellant's counter-action that Stanley was not a party to that action; that the line between the land that he owned and sold to these appellees did not divide the farm of appellant and the farm of Mrs. B. L. Curry et al.; but appellant did allege that Stanley manifested an active interest in the success of the Curry lawsuit, while it was being prepared for trial, and was a witness for them as was also one of his sons; that the final judgment in that action was in favor of appellant, which judgment has never been set aside, modified or appealed from. Because Stanley was the vendor of appellees, and because the line in that litigation was a portion of the division line now in controversy, he alleged that appellees are estopped to deny or question the line which appellant now claims to be the true boundary between their farms. As before stated, Stanley, the vendor of the Damrons, was not a party to that action, nor were Stanley or the Damrons in any way effected by the result of that lawsuit. The establishment of the boundary line between the land owned by Mrs. B. L. Curry et al., and the land owned by appellant, by that judgment, could not and did not estop or preclude Stanley or his vendees, the Damrons, from claiming the true boundary to be where they now contend it is in this action. There is no merit in that contention. Bush et al. v. Chenault's Ex'r, 175 Ky. 598, 194 S. W. 777; Mentz's Assignee v. Mahoney et al., 150 Ky. 409, 150 S. W. 503.

Appellees pleaded that when they purchased the land they now own from W. M. Stanley, the line as now claimed by them was shown by a fence that then existed and which had been built and rebuilt at the same place for fifty years continuously; that the fence was on the line claimed to be the division line by them when purchased and conveyed to them by Stanley; that this division line was claimed by him and their vendors and all those under whom they claimed, for more than fifty years, and that they since their purchase, and those under whom they claimed, have been in the quiet, peaceful, adverse and continuous possession to that line fence, holding, using and claiming it as their own continuously for more than fifty years.

Appellant traversed appellees' allegations and alleged that he and his immediate vendors had owned,

used, held and claimed the strip of land continuously, and had been in the peaceful, adverse and continuous possession thereof to the line where he claims the fence should be for more than thirty years, claiming it all the time as his own. This is denied by appellees.

On this issue the proof pro and con was taken. Appellees showed by the evidence of nineteen witnesses, many of whom had lived in the community and neighborhood for fifty or sixty years; some of whom had lived upon and cultivated it to that fence, testified that they knew where the corner stone was originally situated, which appellees alleged appellant removed some ten years before the institution of this action and placed lower down upon the land of appellees.

It is unnecessary to encumber this opinion with the testimony of all of the witnesses, all being practically of the same import. The evidence of only a few will suffice.

A. R. Damron stated that they purchased their land from W. M. Stanley and wife on the 6th day of March, 1934. At the time they did so the line fence between the two farms, which they claim to be the true line, ran from the highway to a walnut tree, as set out and described in the judgment of the court; that he had known the line to be at that place for more than twenty years continuously. W. M. Stanley who sold the Damrons the land, testified as follows:

"Q. This deed refers to a line running in a southerly direction with the fence and with a black walnut tree, to a planted stone at Bent Branch. Do you know the location of this fence? A. I do.

"Q. Is this fence the dividing line between the land that you sold A. R. Damron and wife, and the lands of the defendant, J. Mont Bevins? A. Yes, sir.

"Q. Do you remember of seeing this black walnut tree that is referred to in this deed? A. I certainly do.

"Q. How near is this walnut tree to this fence line? A. Fence line adjoins the tree.

"Q. How long did you own this land, Mr. Stanley? A. Let's see; about 11 years; bought it in 1923.

"Q. Has there been any change, or was there any change in the location of this line fence, during the time, that you owned what is now the A. R. Damron tract? A. No, sir.

"Q. How long have you known these two tracts of land; that is, the A. R. Damron tract and the J. Mont Bevins tract? A. Between 35 and 40 years.

"Q. How long has this line fence, that runs by the walnut tree, been on its present location? A. Ever since I have known it.

"Q. About how many years has that been? A. 35 years, close to it."

G. W. Bevins, a relative of appellant, stated that he had known the two farms for twenty-five years or longer; that the fence now claimed by appellees as the true line between the farms, was torn down where it was formerly built by appellant "this last spring"; where it was agreed upon by Hinkle and Harrison; that he knew it while Dan Harrison lived upon it and up to the time W. M. Stanley bought it; that before it was torn down by Bevins it ran up the hill by a black walnut tree; that it separated the two farms for more than twenty-five years. Mary Stanley said she was sixty-four years of age; that she had known the tract of land for fifty years; that she was reared in that vicinity, about a mile and a quarter from this land; that she knew where the line ran from what is known as Bent Branch up the hill by a black walnut tree to a hickory tree corner; that the fence was on the line and had been at that place for fifty years; that she went to see it the morning she gave her deposition and the line claimed by appellees was the same one that Harrison and Hinkle had agreed upon; that Hinkle who sold the land to Bevins, cultivated their land up to this fence and no further; that while her husband owned the land before he sold it to appellees, he cultivated the land up to this fence; that Dan Harrison set out an orchard on the land and one of his daughters lived there and set out fruit trees; that the apple trees set out on the land now claimed by appellees are about forty-eight or forty-nine years old; that the entire orchard is on the land that belongs to appellees. T. W. Blackburn stated that he had known the land owned by the Damrons for thirty-five years or longer; that he once lived upon the Damron tract; that in the year 1920 he tended the land up

to this fence claimed by the Damrons and also tended and pastured the orchard; that during that time he repaired the fencing along this line. When he did so, appellant, Bevins, told him that it was a partnership fence and that he was supposed to help repair it, but he was so busy, he could not do so, nor hire anyone to help him. It is in evidence that Charlie Picklesimer surveyed the land and made a map showing where the fence in controversy is located and that map is a part of the record. T. W. Blackburn was also asked and answered the following questions:

"Q. The engineer refers to the rock on the bank of Bent Branch, where this fence begins, as not being found. You can say whether or not, you ever knew of this marked stone being there? A. Yes, sir.

"Q. You will examine this map, and note the circle indicating the marked stone, at the letter "A" just across the creek, from where this fence begins, and say whether or not that is the location, where the marked stone once was? A. (Witness examines map) and says 'to the best of my knowledge that is the location.'

"Q. Do you know who destroyed that marked stone? A. While J. Mont Bevins was overseer, the road was changed, from the left as going up, under a house to the back, and while road hands was working the road, Mr. Bevins had the stone removed and pounded up."

A number of other witnesses corroborated this testimony. On the other hand, appellant states that he was familiar with the location of the boundary line between the two farms; that he had lived in that vicinity all of his life; that he was sixty years of age; that he had known the line for fifty years; that a portion of the line between the farm that he owned, being that part between the farm of the Currys and his land, was litigated by them in an action in the Pike circuit court which was not the line between the land of appellant and appellees, but it was a portion of the original line between the two tracts. He further stated that before the suit was brought against him by the Currys, the Currys had already sold the land to W. M. Stanley, but he did state that Stanley took a diligent and active part in that litigation; was present at the taking of the depo-

sitions and was in sympathy with the Currys; that he gave his deposition in behalf of the Currys; that the result of that litigation was in his (Bevins') favor and the line established by that judgment was a portion of the same line that he is now claiming to be the true line between his land and that of the Damrons. He stated that the line known as the Mineral Line, between Hinkle and Harrison, is the line that he now claims; that he had owned a part of the land for more than forty years and the remainder of it for more than thirty-four years; that it is the same line agreed on between Hinkle and Harrison in 1887. He denied that he had caused the corner stone to be removed or mutilated, that was marked and planted on the line formerly located by Hinkle and Harrison between their respective lands; denied that he removed or destroyed any part of the agreed corner, but further stated that the corner was there when the public road was built and is there today; that the stone that is there is a large stone, possibly five or six feet wide and long, almost a square rock; that the rock that is there is the agreed corner between Hinkle and Harrison and has been so for almost forty years. He denied that the line was located at the point shown on the map filed in the record running from the letter "A" to the walnut tree and from thence to the hickory tree. He further stated that the fence on the line claimed was built by W. M. Stanley when he was away from home, over his objection; that it is not upon the true line. He denied that the line claimed by him ran to the walnut tree as claimed by the witnesses for appellees; that the walnut tree was thirty-five or forty feet from the true line, and on his side.

There is other testimony favoring the contention of appellees, but after a careful review of the entire record, we cannot reach the conclusion that the court was wrong in the judgment rendered. It is a rule of this court that where the evidence is conflicting and upon a consideration of the entire record, the mind is left in doubt, and we cannot say with reasonable certainty that the chancellor has erred, it is our rule not to disturb the finding. Coburn v. Coburn, 157 Ky. 849, 164 S. W. 105; Wathen v. Wathen, 149 Ky. 504, 149 S. W. 902; Potter v. Damron, 150 Ky. 587, 150 S. W. 647; Smith v. Rader, 157 Ky. 178, 162 S. W. 799.

Wherefore, the judgment is affirmed.