## Layne v. Layne et al.

March 7, 1939.

JOHN W. CAUDILL, Judge.

J. B. CLARKE and B. M. JAMES for appellant.

J. M. BOLLING and C. L. STEPHENS for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

M. S. Layne, a resident of Floyd County, died intestate in June 1928, at an age of over 90 years. He had been married twice and was survived by 8 children by the first marriage and 2 by the last. His last wife, who was more than 30 years his junior, also survived him. On December 12, 1923, M. S. Layne and wife executed and delivered to their son, Elbert S. Layne, a deed for about 5 acres of land, which included the residence and other buildings on the farm of the former.

After the death of M. S. Layne, the widow and some of his heirs at law instituted this action against other heirs at law describing certain lands owned by decedent at the time of his death and the interests of various parties therein and asked that dower be allotted to the widow and the lands partitioned between the heirs at law. Without entering into detail concerning all subsequent pleadings and proceedings, it is sufficient for the purpose of this appeal to say that finally all the children by the first marriage of decedent filed answer and counterclaim against his widow and her two children alleging in substance that at a time when M. S. Layne was mentally incompetent to manage his affairs or transact business or to appreciate the nature and effect of such transactions, the widow and her children through undue influence upon him procured him to turn over to them large sums of money and caused him to execute the deed for a tract including his residence to Elbert S. Layne. They asked for an accounting for such sums of money so procured from decedent and that the deed to Elbert S. Layne be cancelled, set aside and annulled.

On the issues made by a traverse of that answer and counterclaim and by other pleadings and after proof

filling several large volumes had been taken, it was adjudged by the chancellor, among other things, that the deed executed by M. S. Layne and his wife to Elbert S. Layne be set aside and held for nought on the ground that "the mental condition of M. S. Layne was such at the time he was unable to enter into or carry through such transaction." This appeal is prosecuted by Elbert S. Layne from that portion of the judgment.

The recited consideration in the deed to Elbert S. Layne is $1 and the love and affection which the grantor had for the grantee and the further consideration that he take care of the old folks during their lives and keep them with suitable means and a home with him. It is further provided that the deed would not have full effect until after the death of the grantors.

It is argued in substance by counsel for appellant that (1) evidence of peculiarities, eccentricities, forgetfulness, failure to recognize friends, etc., is not sufficient to show mental incapacity to execute a deed and especially so where provisions which he caused to be placed in the deed showed that he knew the purport and effect of his act; (2) that the burden is on the one seeking to establish the mental incapacity of the grantor to show by strong and convincing evidence that he was so incapacitated at the immediate time of the execution of the instrument complained of. Counsel for respective parties indicate that it is unnecessary to read the entire transcript of evidence consisting of more than 1300 pages but in compliance with rule 5 of this court they refer to the pages in the transcript for evidence supporting their respective contentions. Counsel for appellant refer only to the evidence of Dr. T. E. Leslie and J. L. Layne, deputy clerk, who prepared and took the acknowledgment to the deed in controversy.

The evidence shows that in December 1921, M. S. Layne sold coal and mineral lands or rights for a sum in excess of $70,000. At the time it appears that his wife and all of his children entertained an idea that he did not have mental capacity sufficient to transact business and that he was being imposed upon in the transaction; that Broadus Layne, a brother of decedent, through some sort of fictitious claim received over $30,000 of the purchase price for the coal lands. On November 27, 1923, Telia Layne, widow of decedent, filed an affidavit or petition in the Floyd circuit court asking that a committee be appointed for M. S. Layne and in

this instrument stated in effect that she was thoroughly acquainted with the physical and mental condition of M. S. Layne; that to her best knowledge and belief it was necessary for the preservation and safe keeping of his estate that a committee be had; that he had dissipated large portions of his estate and that in his present mental and physical weakness was liable to continue such dissipation; that such action had been agreed to and understood between herself and the heirs of M. S. Layne. This writing and the signature of Telia Layne thereto were witnessed by Elbert S. Layne and two other sons of decedent. About this time or shortly thereafter, the widow and heirs of M. S. Layne conceived the idea of taking legal steps to recover from the brother of M. S. Layne the sum the latter had received out of the purchase price of the coal land and to that end, Elbert S. Layne, accompanied by Sheridan Layne, an attorney and relative of M. S. Layne, made a trip to Frankfort to consult a firm of prominent attorneys with respect to the proposed litigation and the matter of having a committee appointed for M. S. Layne. Some time in the summer or fall of 1923, Drs. Leslie and Richmond, at the request of Elbert S. Layne, visited M. S. Layne for the purpose of examining him touching his sanity. Dr. Leslie testified that he went to the home of M. S. Layne for that purpose and had dinner with him, remaining for three hours or more; that he observed him, asked questions concerning his memory, talked about different subjects including his farm and its value, and present and past events; that he and Dr. Richmond reported to the court that to the best of their opinion M. S. Layne was of sane mind for a man of his age. The doctor made no further statement concerning the mental condition of M. S. Layne as he observed it but on cross examination and in reply to a hypothetical question based on conditions as portrayed by other witnesses stated in effect that in his opinion Mr. Layne was not capable of tending to business and further stated that those closely associated with him were in better position to judge as to his mental condition than he was from the examination made. J. L. Layne, a son of decedent, and the deputy clerk who took the acknowledgment to the deed, stated that he wrote the deed and took the acknowledgment thereto at the direction of his father who took him out and pointed out the boundaries he wanted to convey. His evidence indicates that the grantor seemingly understood what he wanted to do. About two

years before the death of M. S. Layne the court at the behest of his widow and heirs and because of his mental and physical condition did appoint a committee who looked after his affairs until his death.

The evidence of two or three of the sons of decedent by his first marriage was to the effect that he had a stroke of paralysis about 1910 or 1911 and that thereafter he was in an enfeebled state mentally and physically. Their evidence and the evidence of Sheridan Layne is to the effect that thereafter and especially in and after the year 1923 M. S. Layne lost interest in business affairs and let his farm run down; that before he became enfeebled he was a careful, prudent business man and exercised extreme caution in business transactions and in signing papers of any character, but that in the later years of his life he would sign most any paper presented to him without reading or making inquiries or examination of its contents. In going through the evidence it appears that in his earlier life M. S. Layne had some financial difficulties and some of his land was sold under execution and purchased by his first wife. There was an attempt to show that he had changed the corners to the boundary purchased by his wife so as to include some bottom land owned by him; that the deed made to Elbert S. Layne was for the purpose of making up to him for the land thus included in the boundary purchased by the first wife and which was later partitioned between her children. However, it will be noted that the deed makes no reference to that matter which it likely would have done if that had been the consideration. Little if any of the evidence referred to by counsel for respective parties has any bearing on the question of undue influence but the evidence clearly discloses that only a few months before the deed was made, appellant, along with his mother and other heirs of M. S. Layne, regarded deceased as mentally incompetent to transact business or manage his affairs; and that appellant was active in steps taken and proposed to be taken to have a committee appointed and to set aside some transactions others had had with M. S. Layne. For some reason not disclosed by the record, he did not pursue these matters but instead accepted from his father the deed for property which the evidence shows to be of a value of not less than $5000, and notwithstanding the recited consideration of the deed, the evidence clearly discloses that M. S. Layne at the time had a large and valuable

landea estate and $25,000 or more in money in addition to other personal property. Two or three years later when a committee was appointed for M. S. Layne over $16,000 in cash was turned over to the committee. Not only does the evidence disclose that M. S. Layne had ample property to provide for the support and comfort of himself and wife but he had other sons interested in his welfare who had assisted him in looking after his affairs; and there is nothing in the evidence to show that appellant was financially able to assume the burden of caring for his father and mother except from his earnings when he worked in a nearby mine or in a store or poolroom in a village near his home. The evidence shows that appellant was not present when the deed was made and there is nothing to indicate that he knew anything about it but it does appear that he was always kind and considerate of his father and did many things to contribute to his comfort and happiness.

The presumption is that a grantor of lands is possessed of mental capacity to convey same and ordinarily the burden is upon one asserting lack of such capacity to establish same, but when, as in this instance, there is a close or confidential relationship between the parties and the grantor is old and infirm and the grantee young, alert and vigorous, the burden shifts to the latter to show that the grantor had sufficient mental capacity to know and appreciate the effect and consequences of the act and to make the conveyance. Strain v. Strain, 237 Ky. 270, 35 S. W. (2d) 306; Masters v. Comley, 244 Ky. 646, 51 S. W. (2d) 939; Petrey's Adm'r v. Petrey, 262 Ky. 222, 90 S. W. (2d) 4; Risner v. Risner, 261 Ky. 359, 87 S. W. (2d) 970; Huffaker v. Brammer, 193 Ky. 267, 235 S. W. 727; Watson v. Watson, 190 Ky. 270, 227 S. W. 270. While old age alone will not raise a presumption of mental incapacity, it is a factor to be considered in connection with other matters tending to show such incapacity. Coffey v. Lair, 256 Ky. 741, 77 S. W. (2d) 4. At the time this conveyance was made the grantor was past 83 years of age and according to much of the evidence was feeble and infirm both in body and mind. These and other facts and circumstances above related strongly tend to support the chancellor's finding. Under well recognized rules this court has consistently refused to disturb the judgment of the chancellor when it is in accord with the evidence or where the evidence for the one challenging the findings of the chancellor does

nothing more than raise a doubt concerning the correctness thereof.

Judgment affirmed.