**STANIFER v. STANIFER.**

Court of Appeals of Kentucky.
June 22, 1951.

As Modified on Denial of Rehearing
Nov. 21, 1951.

John Marshall, Jr., Henry R. Heyburn, Peter, Heyburn & Marshall, all of Louisville, for appellant.

Clay Shackelford, A. R. Burnam, III, Shackelford & Burnam and James S. Chenault, all of Richmond, H. Clay Kauffman, Lancaster, for appellee.

WADDILL, Commissioner.

This is a suit in equity by Cecil Stanifer against his brother, Charles, for a dissolution of their partnership and for an accounting between them.

The question for determination is whether the mercantile business which they operated under the name of "Stanifer's" was equally and continuously owned by them as partners since 1935 and to what extent each is now entitled to share in the undistributed profits and assets of the business.

Both admit that the partnership existed, but disagree as to when it was formed. Cecil contends that it originated in January, 1935. Charles asserts that it was not formed until December, 1947.

The court decided for Cecil; it dissolved the partnership and appointed a receiver, with directions to reduce the assets to cash, pay the firm debts, and to settle its accounts. The court further found that since 1935 Charles had drawn out of the firm $36,673.83 more than Cecil and adjudged that Cecil recover of Charles one-half of that excess, or $18,336.81.

This business adventure began in 1907, when Joe Stanifer, their father, opened a retail clothing store in Richmond. In 1909, Charles commenced clerking in the store and Cecil, who was younger, later joined Charles in working there.

In 1933, a local bank which held Joe Stanifer's past-due note for $12,000, was closed and placed in receivership. In November, 1934, the bank's receiver endorsed the note without recourse and delivered it to Charles and Cecil in consideration for certain real estate which they conveyed to him as receiver. The property conveyed by Cecil, was obtained by him from his father by gift.

Later Joe Stanifer filed a petition under the Bankruptcy Act, 11 U.S.C.A. § 1 et seq., seeking a composition with his creditors. His offer of twenty cents on the dollar was accepted and confirmed by the United States District Court in March, 1935. Payment of this twenty per cent on the $12,000 note was waived by Charles and Cecil. The amount needed to pay the creditors and notes amounted to $727.50. Charles paid this sum and in addition, gave his father something over $1500 with which to buy inventory for the store.

Contemporaneously with the conclusion of the bankruptcy proceedings, the ownership and operation of the store underwent certain changes. The name of the business was changed from "J. S. Stanifer" to "Stanifer's." The public was advised through an announcement published in a Richmond newspaper that the business had been reorganized and would thenceforth be operated as a partnership consisting of Charles and Cecil. Various firms and other agencies from which the merchandise for the store was purchased were advised that Charles and Cecil were operating the business as a partnership and credit was sought and obtained on that basis. The bank account was deposited as "Stanifer's" authorizing both Charles and Cecil to draw checks upon this account. The "J. S. Stanifer" books were closed and new books were opened, the first entries appearing February 28, 1935, crediting Charles and Cecil jointly with a one-half interest in the business. The U. S. Partnership Return which "Stanifer's" filed with the collector of Internal Revenue for the year 1935, signed and acknowledged under oath by Charles, stated that "Stanifer's" was a partnership consisting of Charles and Cecil, each having a fifty per cent interest therein and revealing the income for that year being equally divided between them. The U. S. Return filed for 1936 was signed and made under oath by Charles, stating that "Stanifer's" was a partnership consisting of Charles and Cecil and reflecting that the income for that year was to be equally divided between them. The U. S. Partnership Returns filed for 1937 to 1943, inclusive, differ from those filed for 1935 and 1936, in that they indicate that the income for those years was to be divided, in varying proportions, between Charles, Cecil, and Joe, Charles receiving the greater

share. The U. S. Returns for 1944 to 1946, inclusive, indicated that the income for those years was to be equally divided between Charles, Cecil, and Joe. All returns, U. S. and State, were signed and when required, acknowledged under oath by Charles, except for one U. S. and two State Returns which were signed by Cecil. About January 22, 1942, a written report was filed with the Kentucky Department of Economic Security for "Stanifer's," this report being signed by Charles, stating that the business was owned and operated by Charles and Cecil, and that they had acquired it from Joe Stanifer prior to January 1, 1936. About September 30, 1937, Charles and Cecil transferred the bank account of "Stanifer's" from the bank where it had been carried since 1935, to another bank, both jointly executing and filing with the latter bank an instrument of joint deposit, which reflects that the account belongs to them. On August 5, 1946, Charles and Cecil signed a lease for the building in which they operated the business known as "Stanifer's." On February 1, 1947, a policy of insurance was issued on "Stanifer's" stock of goods which indemnified Charles and Cecil against losses enumerated therein. Throughout the entire period from 1935 to 1947, Cecil devoted his entire time to the operation of "Stanifer's," whereas Charles gave something over twenty-five per cent of his time to the affairs of the business. Throughout the entire period of the operation of "Stanifer's" the profits from the business were regularly credited to the respective capital account of Charles and Cecil in equal amounts, and their respective salaries were generally the same. "Stanifer's" assets included a number of government bonds having a total maturity value of $30,000 which had been purchased out of the accrued profits. One-half of these bonds were bought in the name of Cecil or his wife, and one-half were purchased in the name of Charles or his wife, but were continued to be carried as assets of the store.

After the reorganization of "Stanifer's," Joe continued to actively work in the business until about 1943. In 1942 a controversy arose about the operation of the business. Joe demanded that he be paid for his interest in the store. At that time he was claiming that he was a partner in the business. While this dispute with Joe was pending, during July, 1947, Charles withdrew over $19,000 from the store account. Charles claims that it was understood between Cecil and himself that this should be done as a precaution against Joe's attaching their bank funds. Charles also asserted that it was to equalize the accounts between Cecil, Joe, and himself. Cecil says that Charles and he discussed the withdrawal at the time. Joe was threatening to sue them for his interest; that Charles indicated he was going to withdraw $10,000; that later and, after settlement was made with Joe, that he asked Charles about the withdrawal he made, and Charles replied that he had that much money due him from the store account. Cecil claims he didn't know Charles had withdrawn $19,000 until several months later. Subsequently, Cecil drew a check on the firm's account, without Charles's knowledge, for over $11,000, but was unsuccessful in cashing it, as Charles had advised their bank to limit Cecil's withdrawals. Cecil's reason for this was that he was trying to equalize the large withdrawals made by Charles.

In the fall of 1947, Joe employed counsel to prosecute his claim to his interest in "Stanifer's." In December, 1947, Charles and Cecil settled this claim by paying Joe $21,500 from "Stanifer's" undistributed profits. This settlement agreement specifically provided that Charles and Cecil had thereby "become the absolute and sole owners of 'Stanifer's' and all of its assets of every kind and character." After the settlement with Joe was consummated, Charles and Cecil returned to the store and had the bookkeeper calculate the amount necessary to equalize them in the business. They then sought an attorney to advise them and to prepare instruments carrying the purported agreement of partnership into effect. The contract was tentatively prepared. One clause of it provided that Charles should withdraw from "Stanifer's" $21,703.83 in order to

adjust the capital contributions, earnings, etc., to which he was entitled by reason of the operation of the business heretofore when Joe was a partner, and that after that payment, Charles and Cecil would each own an undivided one-half interest in the partnership. Although Cecil would not sign this partnership contract there was no open breach, nor any interruption to the operation of the store. Soon thereafter, Charles cashed more of the government bonds in approximately the amount of $15,000 and withdrew from the store account about $1600. Soon thereafter Cecil filed this suit.

This summary of the material facts has been elicited from a voluminous record in which the evidence bristles with contradictions and denials.

Since the parties have agreed that no question is being made concerning the form of the judgment allowing Cecil a recovery of a money judgment against his partner, Charles, on a claim arising out of the partnership, the rule prohibiting such a recovery, prior to the establishing of their respective rights in the business and the payment of the partnership debts, has no application to this case.

The basis of appellant's grounds for reversal is that Cecil and Charles were not equal partners until 1947. For a proper determination of the question, we must look to what transpired at the time the business was reorganized. Prior to their father's financial difficulty, Charles and Cecil make no claim of interest in the store. In 1934, Joe's note for $12,000 was endorsed and transferred to them by the bank receiver. By waiving payment of it in the bankruptcy proceedings, they thereby acquired their original interest in the business. Immediately they proceeded upon this joint business venture. Whatever their interest was therein, it was joint and equal. The sequence of events that followed, and their acts, words, and conduct during the following thirteen years of this business association, illustrates that such continued to be their intention to the time of disagreement. Caskey v. Bradley, 292 Ky. 789, 168 S.W.2d 36; McCormick

v. Stofer, 12 S.W. 151, 11 Ky.Law Rep. 398. Having found that the interest of Charles and Cecil in the partnership was equal from its inception and continuous, it becomes unnecessary for us to discuss other contentions advanced by appellant.

We must also recognize an established rule of this Court, and one that we shall now adhere to, that we must give due weight to the Chancellor's findings of fact, and where the evidence is conflicting and doubtful so as to leave reasonable minds in doubt, the finding by the Chancellor will not be disturbed. Anglin v. Anglin, 259 Ky. 373, 82 S.W.2d 429; Thomas v. Siddens, 261 Ky. 613, 88 S.W.2d 277; Potter v. Damron, 150 Ky. 587, 150 S.W. 647.

Judgment affirmed.