## VETERANS SERVICE CLUB et al. v. SWEENEY.

Court of Appeals of Kentucky.
Oct. 17, 1952.

Lawrence S. Grauman, Simeon S. Jacobs, Louisville, for appellants.

Raymond C. Arny, Carl J. Richard, Louisville, for appellee.

STEWART, Justice.

This suit in equity was brought by plaintiff, Ruel B. Sweeney, against defendants, the Veterans Service Club, a corporation, and the incorporators and officers thereof, namely, Marshall F. Kaufman, Sr., Marshall F. Kaufman, Jr., and Louise B. Kaufman, to recover $4,605, which is triple the sum of $1,535 alleged to have been lost by Sue Sweeney, the wife of plaintiff, while gambling with defendants. From a judgment entered against all the defendants in favor of plaintiff for triple the amount of $500, or $1,500, this appeal is prosecuted. Plaintiff has cross-appealed, contending he was entitled under the proof to recover the full amount sought by him.

The action covers alleged gambling losses of appellee's wife for the period of time from October 3, 1947, to October 18, 1948, inclusive, and is based upon KRS 372.040, which is in this language: "If the loser or his creditor does not, within six months after its payment or delivery to the winner, sue for the money or thing lost, and prosecute the suit to recovery with due diligence, any other person may sue the winner, and recover treble the value of the money or thing lost, if suit is brought within five years from the delivery or payment."

Two contentions are made on this appeal: (1) That the judgment was erroneously rendered against the individual incorporators, and (2) that the proof did not sustain the finding of the Chancellor.

Appellants' evidence attempted to establish that none of the incorporators was a winner within the meaning of the foregoing statute, because all of the money earned by the club was kept by it and disbursed only for charitable purposes, chiefly for veterans' assistance; that Marshall F. Kaufman, Jr., and Louise Kaufman had nothing whatever to do with the conduct or management of the club and received no income from it, directly or indirectly; and that, although Marshall F. Kaufman, Sr., did spend practically all of his time at the club in a managerial capacity, he received no compensation for his services.

Ostensibly the club was chartered as a nonprofit corporation for a legitimate purpose and testimony, introduced in behalf of it, undertook to show that it was organized to extend charitable help to ex-service men and to promote certain civic causes. The proof abundantly disclosed that the corporation engaged extensively and for the most part in operations of a gambling nature. It is also uncontradicted that the elder Kaufman, as one of the managers of the club, worked at the club continually and assisted in conducting the gambling business there. Both his son, Marshall, Jr., and his daughter, Louise, admitted they made many trips to the club, where on each occasion they saw money wagered in slot machines and on bingo games. It is, therefore, apparent that the club had their sanction as officials of the corporation to engage in gaming ventures.

█ The facts developed in the case at bar justified the finding by the Chancellor that the incorporation was but a cloak or mask devised by the incorporators to cover their illegal acts of gambling and to shield them from the consequences of these acts. In such a case the corporate form will be disregarded to the same extent as if it were nonexistent and liability will be fixed upon those who attempt to employ this type of instrumentality as a protective measure for their unlawful practices. It is a stern but just maxim of law that fraud vitiates everything into which it enters.

█ We find no merit in the contention of the incorporators that they were not winners within the purview of the above statute. Under the facts of this case they benefited because the corporation benefited. As incorporators and officers of the corporation, Marshall, Jr. and Louise, selected their father as manager of the club and thereby became implicated along with him for his acts. In McGrew v. City Produce Exchange, 85 Tenn. 572, 4 S.W. 38, 39, 4 Am.St.Rep. 771, five persons organized a corporation for a pretended legal purpose but actually in order to engage in wagering on the rise and fall of the prices of certain commodities in the open market. Suit was instituted against the incorporators by McGrew to recover certain amounts lost on wagers through the corporation. Defenses were interposed by the incorporators (a) that the corporation alone was liable and (b) that the incorporators could not be held individually responsible for the illegal acts of its managers or officers. That decision, in affirming a judgment against the incorporators for McGrew's losses because the corporation was created as a device to cover up gaming transactions, had this to say as regards persons who associate themselves together in corporate form and designate one of the incorporators to conduct the operation: "When it appears that several have unlawfully combined and confederated to gamble with and defraud another through a selected party, each confederate participating is liable for the entire amount received, as the money is received for all, and by all, according to the devised illegal method under which they were all jointly operating."

The Chancellor in the instant case properly swept aside the legal fiction of separate corporate personality and correctly held that the individuals who composed it could not shield themselves from the effects of their unlawful acts by claiming that their acts were those of the corporation.

█ As to the second ground urged by appellants for reversal, they insist that appellee did not prove his wife's losses. Appellee's cross-appeal is pitched on the contention that the evidence introduced warranted a recovery by him of the full amount for which he sued. Of course it was incumbent upon appellee to establish in a competent manner the alleged losses. Agnew v. L. W. Henneberger Co., 250 Ky. 482, 63 S.W.2d 592. The suit is predicated upon a day-by-day itemized statement set forth in the petition which was admittedly made up from Sue Sweeney's memory two years after the last loss was supposed to have been sustained. Two main defenses were that her winnings exceeded her losses at the club and that she, an inveterate gambler, gambled and lost elsewhere, which losses she was attempting in the action to charge up to appellants. The Chancellor did not place much credence upon the itemized account for the reason that, although Sue Sweeney, the chief witness, seemed to be able to tell from memory exactly what her losses were she had great difficulty remembering any of her winnings. However, he did conclude that Sue Sweeney had sufficiently proven the loss of $500, which was a sum she had recovered from the Elks Club in Louisville on October 12, 1948, in settlement of a suit for personal injuries which, according to her, she had promptly gambled away at appellants' club on the following October 14th, 15th, 16th and 18th.

The evidence in this case is conflicting. Much depends upon the credibility of the witnesses. The Chancellor, being on the ground and being acquainted with the parties and witnesses, is in a better position than we are to determine the weight of the testimony. In such a case where, upon

a consideration of the entire record, the mind is left in doubt and we cannot say with reasonable certainty the Chancellor has erred, it is our rule not to disturb his finding. Coburn v. Coburn, 157 Ky. 849, 164 S.W. 105; Smith v. Rader, 157 Ky. 178, 162 S.W. 799; Potter v. Damron, 150 Ky. 587, 150 S.W. 647.

Wherefore, the judgment is affirmed on the appeal and on the cross-appeal.