## Davis, et al. v. Creech, et al.

(Decided June 4, 1918.)

### Appeal from Harlan Circuit Court.

1. Deeds—Undue Influence—Fraudulent Conveyances.—Evidence examined and found sufficient to justify the court in setting aside a deed made by a father to a son upon the ground that it was procured by undue influence.

2. Vendor and Purchaser—Bona Fide Purchaser from Fraudulent Vendor.—A bona fide purchaser, without notice of the fraud by which his vendor secured the title, will not be affected by it.

HALL & JONES for appellants.

ZEB A. STEWART and G. A. EVERSOLE for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming in part and reversing in part.

In January, 1912, Isaiah Creech, who was then about 83 years old, executed a deed conveying to the appellee, Elisha Creech, a tract of land in Harlan county worth about $6,000.00, for the recited consideration of $500.00.

In June, 1912, Isaiah Creech died, leaving several children, and all of them, except three, brought this suit in 1913 for the purpose of having the deed made to Elisha set aside upon the ground that Isaiah, at the time he made it, was mentally incapable of executing the instrument, and its execution was procured by undue influence.

Soon after the petition was filed, G. A. Eversole came into the case by an intervening petition and set up that subsequent to the conveyance to Elisha, he had purchased, from Elisha, a part of the land deeded to him by his father, and after averring that Isaiah was capable of making the deed, and there was no fraud or undue influence in its procurement, he asked that the petition be dismissed in order that his interest in the land might not be affected by the suit. To the petition an appropriate answer was filed by Elisha and to the intervening petition of Eversole an appropriate answer was filed by the children who brought the suit. Thereafter the case was prepared for trial, and the petition of the children seeking to have the conveyance set aside was dismissed.

The evidence in this case presents the usual features appearing in cases of this character. A number of witnesses testified in support of the respective contentions of the parties, and as the issues in the case are purely ones of fact, it will be necessary to make, at least, a brief review of the evidence. The substantial facts are that Isaiah Creech was about 83 years old when this conveyance was made, and that he had been for some years before this time and was, at this time, a heavy drinker of intoxicating liquors, with which he was kept well supplied by his son Elisha. Elisha Creech was the youngest child and had always lived in the home of his father, whose wife died about 1900. That he should have been very much attached to his son Elisha, who had always lived in the same house with him, is nothing more than natural, and especially did the reliance and the dependency of the old man on the young one grow with the old man's declining years. There is much evidence in the case that for several years before the death of his father, Elisha had practically controlled all of his business affairs, and that he would not make any trade unless he had first consulted his son Elisha.

J. J. Huff wrote the deed, and as he was not cross-examined when introduced as a witness for the children attacking the deed, we may reasonably attach considerable weight to his evidence, and recite certain parts of it is a fair sample of what other witnesses said. Huff testified in substance that he was called on by Elisha to write the deed, and said that Elisha had told him several times that he wanted him to write a deed for his

father; that when he came to write the deed, the old man was present, but the witness could not say whether he was drunk or sober, nor did he undertake to give the boundary of the land, saying that he, Huff, knew the boundary, and thereupon Huff, Elisha and Alex Creech fixed the boundary; he said he asked what consideration should be expressed in the deed, and that the old man said he did not know, "And I believe Elisha Creech says 'what about making it $300.00' and I suggested that they make it $500.00, which they did." He further says that his understanding was that there was no consideration paid for the land; that he had written a good many deeds, at different times, for Isaiah Creech, and he always signed them with his own hand, but that he did not sign this deed, or two others that he made at the same time, but made his mark. When asked what influence Elisha had over his father, he said that all he knew about it was that Elisha managed the affairs at the home of Isaiah, and seemed to have full control of his business matters.

Although the deed recites a consideration of $500.00, it is very evident that no consideration at all was paid, and there is also evidence tending to show that the old man, several times, said before this deed was made that he wanted what he had left for his children in equal shares.

It further appears that on the day this deed to Elisha was made, the old man deeded some property, of small value, to his sons, Alex and William, and that he had, about two years before, conveyed to his daughter, Polly, a little piece of land. No attack, however, has been made on any of these conveyances because it does not appear that either of them amount, in value, to more than what the legitimate share of the grantee would be in the estate of Isaiah Creech. But the property deeded to Elisha was several times more valuable than his equal share in the estate would have been.

Taking into consideration the age of Isaiah and the natural physical and mental weakness attending it, together with the undoubted influence that his son, Elisha, exercised over him, we are of the opinion, in the light of all the circumstances surrounding the transaction, that this conveyance was not the product of a free and independent mind, but was the result of an improper influence exercised over the grantor that constrained

him to do that which he would not have done if left to the uncontrolled exercise of his own judgment.

In respect to the conveyance made by Elisha to Eversole, there are some circumstances in the record that tend to show that Eversole, before his purchase, had some doubt as to whether Elisha had secured a good title to the property conveyed to him by his father, but we think the circumstances are not so controlling as to justify us in setting it down that Eversole should be charged with notice of the vice in the deed to Elisha. The intended purchaser of property from a person who has a good record title is not obliged to make inquiry in order to put himself in the attitude of a bona fide purchaser; he is only charged with such notice as may come to him in the way of facts or circumstances that would lead a person of ordinary prudence to believe that there was some infirmity in the title, and this character of notice is lacking. But Elisha, in the settlement of the estate, should be charged with the money paid to him by Eversole for the land.

Wherefore, the judgment is reversed with directions to set aside the deed made to Elisha, except to the extent of the conveyance to Eversole. As to Eversole, the judgment is affirmed, and his title will remain unaffected by this decision.