## Huffaker, et al. v. Brammer, et al.

(Decided December 16, 1921.)

Appeal from Wayne Circuit Court.

1. Deeds—Mental Capacity—Undue Influence.—The gratuitous grantee of an aged and infirm parent must, when the transfer is assailed, show the good faith and fairness of the transaction; that the conveyance was for a valuable consideration; that the parent was possessed of sufficient mental capacity to enter into such transaction and that the conveyance was not obtained by the exercise of undue influence by the grantee over the grantor. If he fails to do so the conveyance will be set aside.

2. Deeds—Mental Capacity—Undue Influence.—The deed of one who is mentally weak or imbecile is not absolutely void but only voidable, the burden being upon the grantee when the conveyance is assailed to show its freedom from fraud and undue influence.

3. Deeds—Undue Influence—Setting aside.—When a young, vigorous son obtains from his aged and infirm father a conveyance of valuable mineral rights without consideration and it is shown that the grantee had charge of the affairs of the grantor, slight evidence will be sufficient to warrant a court of equity in setting aside such conveyances.

BERTRAM & BERTRAM for appellants.

DUNCAN & BELL, J. C. DAVIS, J. P. HARRISON and E. T. WESLEY for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

From the evidence it appears that H. C. Huffaker, a direct descendant of George the Third of England, died intestate at his home in Wayne county in 1917 at the age of eighty-four years, survived by a wife, six daughters and five sons. Before his death the old man conveyed to his son, B. C. Huffaker, on November 3rd, 1914, two-thirds of all the royalty which the father had reserved in a twenty-acre tract of land, conveyed by the father on March 26, 1901, to said son. This litigation was commenced by Ella Brammer and other children of Huffaker against B. C. Huffaker and his grantees, Joe Ragan and C. S. Huffaker, to cancel and set aside said deed of conveyance from H. C. Huffaker for said mineral right to the son, B. C. Huffaker, on the grounds (1) that at the time of the execution of said deed on September 15th, 1914, the father, H. C. Huffaker, was insane and incapable of making such a deed or contract; (2) that said deed was procured by said B. C. Huffaker from his father

by fraud and undue influence. The insanity of the grantor was denied by the grantees, and they further defended upon the ground that the conveyance was made by the father to the son freely and voluntarily without the exercise of any undue influence by the grantees or any one or more of them upon the father to induce him to make said conveyance. The case being prepared and submitted, the chancellor granted the prayer of the petition, cancelled the deed conveying the mineral rights to the son, B. C. Huffaker, and also the deeds from said B. C. Huffaker to Ragan and C. S. Huffaker, and adjudged said mineral rights to belong to the estate of H. C. Huffaker, in which his eleven children are entitled to participate. From this judgment B. C. Huffaker and the other defendants appeal, insisting (a) that the findings of fact by the chancellor are not supported by the evidence; (b) the judgment of the chancellor is contrary to the law; (c) the chancellor erred in overruling the exceptions to the deposition and exhibit filed therewith of Earl R. Tate, a witness for appellees.

For some years before his death H. C. Huffaker, a minister of the gospel and farmer living some miles from Monticello in Wayne county, owned about 250 acres of land, under and on which he contended there were deposits of valuable minerals and oil. The children were all married and did not live in the parental home. In 1901 he conveyed to his son, B. C. Huffaker, twenty acres of the home farm, reserving three-fourths of the royalty from the minerals in and under the said twenty acres. Thereafter he conveyed to the other children small parts of the home farm without making reservation of the minerals under their respective parts. All these conveyances were made upon a consideration recited in the deeds. At the time of the making of the deed to B. C. Huffaker in 1901 it is admitted that the father was mentally capable of conveying the property and that he was not unduly influenced to do so, although he was an old man at that time. Being desirous of selling a part of the twenty acres which his father had conveyed to him, B. C. Huffaker, on September 15, 1914, obtained from his father a deed for the three-fourths of the royalty which the father had reserved in the former deed, whereupon B. C. Huffaker conveyed to his brother-in-law, Joe Ragan, a part of the land and mineral which he had obtained from his father and another part to his brother, C. S. Huffaker, but B. C. Huffaker reserved to himself

and excepted from said conveyances two acres of the mineral right. In obtaining the conveyance of the mineral right from his father B. C. Huffaker paid no consideration. He insists, however, that the father had conveyed a like number of acres to certain other of his children without making a reservation of the mineral right and that this conveyance was intended to make him equal with the other children in the landed estate of the father. Without reciting the evidence we are able to say that it is shown for the plaintiffs that the father, H. C. Huffaker, was at the time of the making of the deed in 1914 sought to be cancelled about eighty-two years of age, infirm both in mind and body; that he had certain hallucinations about fabulous natural wealth in the form of gold and silver mines and gas and oil wells on his property; that he had on different occasions pointed out to persons on his farm the locations of Swift's silver mines and had on more than one occasion engaged persons to dig for the rich ore on his place; that his religious belief in his old days became very different from what it was in his vigorous manhood and was such as was not concurred in by other rational people; that he was unable to get about or to talk in a rational way or to hold his mind on a subject or topic while attempting to discourse upon it; that he had hardening of the arteries, a disease when in the head affects the memory and impairs mental processes; that for some months before his death it was necessary to confine the father on account of his mental derangement and a pen or cage was built in one of the rooms of his residence wherein he was locked to prevent him doing injury to himself and others; that during many months a grandson was employed by other members of the family to look after him and to take care of him; that a streak of insanity was in the family and was recognized by members in the family; that this generally affected the older members of the family or at least became more pronounced as the person advanced in years; that two of H. C. Huffaker's brothers had become insane in their old days, one dying in an insane asylum, the other in confinement in his own home. In support of these various statements concerning the mental condition of the grantor, many strange and unexplainable speeches are attributed to him and many peculiar, unnatural and insane acts, both before and after the making of the deed on September 15, 1914, on his part are related by the witnesses. He was adjudged insane by the Wayne county

court May 8th, 1916, and a committee appointed. On the other hand, the witnesses for the defendants, in substance say that while H. C. Huffaker was old and somewhat infirm physically he was as vigorous in mind at the time of the making of the deed in question as the usual man of his age and manner of life; that he was a man who read and thought a great deal and made up his own mind on all questions and subjects, not being easily influenced; that he freely and voluntarily made the deed for the mineral rights to his son, B. C. Huffaker, and at the time understood the nature of the transaction and the purpose to be accomplished by the conveyance; that the real cause of this litigation was the discovery of oil in paying quantities on the twenty-acre tract conveyed to B. C. Huffaker and the desire of the other heirs to participate in this unfathomed wealth.

Mere mental weakness is not sufficient to invalidate a conveyance if the grantor have sufficient mental capacity to understand the nature, object and purpose of the contract or deed; but if he be so mentally incapacitated as to be unable to understand and appreciate the nature, object and effect of the contract or deed, it is unenforcible, for it does not express his purpose and is not his deed but the purpose and deed of another, he not having sufficient capacity to enter into such contract. Nor does a judgment of a court of competent jurisdiction finding a grantor at a day subsequent to that on which the deed is made, to be an imbecile, make out a *prima facie* case of incapacity on the part of the testator to make a deed on a day anterior to that of the inquest. Such finding is only *prima facie* evidence that grantor was incapacitated to make a deed or contract on the date of such inquest and on subsequent dates not too remote, but this presumption may be overcome by evidence. An enfeebled mind, though not totally incapacitated to enter into contract, is always an easy prey to a stronger and more vigorous mind with which it comes in contact and is therefore always liable to be unduly influenced or overreached by designing persons. We generally refer to undue influence as an influence obtained over the mind of another to such an extent as to destroy free agency and to constrain him to do against his will what he would otherwise refuse to do. One may exercise influence over another by acts of kindness, by appeals to the feelings, reason or understanding, without such influence becoming undue

or unlawful if it does not destroy the free agency of the person over whom it is exercised, and is not employed to obtain an undue advantage. Watson v. Watson, 137 Ky. 25; Murphy v. Murphy, 146 Ky. 396.

Every grantor is presumed to have mental capacity sufficient to effectuate his deed or contract, but this presumption is rebuttable. The presumption is frequently indulged that a deed made by an aged or infirm person to a grantee who is strong and vigorous in mind and body without consideration or a fanciful consideration, is obtained by the exercise of undue influence by the grantee over the grantor. Especially is this true where the parties stand in a trust or confidential relation and the grantor is under obligation to the grantee or under the grantee's dominion or influence. In the case of Davidson v. Davidson, 180 Ky. 190, we held that a grantee of one physically infirm in the custody or in the home of the grantee is under the necessity of showing that the transfer from such old and infirm person to the one having him in custody or in his home was free from fraud and undue influence, and that a deed so obtained will be cancelled unless the grantee sustains the burden of proof by showing that the transaction was freely and voluntarily entered into by the grantor, and that the grantor had capacity to make the deed and did so without the exercise of undue influence over him by the grantee. It is a rule in this jurisdiction that a young, active, vigorous person who obtains a conveyance from an old and infirm person who is closely related to him by blood or marriage or where there is a dependence of one upon the other, there being no sufficient valuable consideration, the burden of proof is upon such grantee to show the good faith of the transaction and that the grantor freely and voluntarily executed the instrument, else the said instrument will be cancelled at the suit of persons interested in the estate of the grantor. Davis v. Creech, 180 Ky. 804; Willoughby v. Reynolds, 182 Ky. 1. The grantor in the instant case was eighty-two years of age and we are convinced by the evidence that his mind was more or less deranged for some months before the execution of the deed in question, and that he was not on September 15, 1914, of such mental alertness as to understand, comprehend or appreciate the nature and effect of the transaction which is evidenced by the deed of that date. The grantee was a young, vigorous man of more than ordinary mental astuteness and power. He had

largely taken charge of the affairs of his father and was conducting the same because of the lack of mentality on the part of his aged parent. The father was, therefore, dependent upon the son in many ways. The mind of the father was subservient to that of his son and no doubt the son could have obtained from his father on the date of the deed in question a conveyance of any or all of the father's property without a protest from the father. It is argued that the father did not reserve the oil right in the other portions of land transferred to his children and that this conveyance of September 15, 1914, to the son, B. C. Huffaker, was made for the purpose of equalizing his interest with that of the other children. At the time of the making of the original deed in 1901 the father was admittedly mentally capable of transacting business and he then reserved a certain part of the oil right. He had a purpose in so doing. He believed that his lands contained oil. As that oil field had been somewhat developed after the year 1901 and before the execution of the questioned deed in 1914 there is reason to suspect that the father would not have parted with the oil right without consideration in 1914, which oil right was then in a measure proven, inasmuch as he did not convey it to the same son in 1901 when the oil field was wholly undeveloped.

The other appellants, C. S. Huffaker, a son, and Joe Ragan, the husband of a daughter of the grantor, are in no better attitude than the original grantee, B. C. Huffaker, for as they were living in the immediate neighborhood of H. C. Huffaker at the time of the making of the questioned deed and for many years before and were constantly associated with him and the immediate members of the family, they were charged with knowledge that the old man was too infirm mentally and bodily to make a valid and binding obligation in September, 1914.

The chancellor having arrived at these conclusions and entered a judgment accordingly, it is affirmed.