## Thompson v. Henson.

March 23, 1948.

Ben T. Cooper and Nat Ryan Hughes for appellee.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

Mary Henson, the appellee, obtained judgment against her son-in-law, W. Rodney Thompson, the appellant, for a cancellation of her deed to him conveying 49 acres of land. Thompson appeals.

It is contended that the chancellor's judgment should be reversed because of its insufficient support by legal evidence tending to show any undue influence or any mental incapacity or any fraud encompassed within the transaction now in dispute.

Mary Henson is a widow who does not know her own age but who has been told that she "was 3 months old when my daddy went to fight in the civil war." She was, therefore, past 80 when this deed was made on July 11, 1945. She bore 11 children, one of whom was a daughter, Dicie, who married Thompson in 1905, then lived with him 39 years, then went the way of all flesh in 1944. This old lady does not read nor write, signs her name only with the X of the untutored, does not distinguish A from B on the printed page, has not visited her county seat at Benton in more than 20 years.

This land was purchased with the sweat of both Thompson and Dicie, his wife, but the title was vested in Dicie alone by some sort of mutual understanding or agreement between them. And so, when Dicie died in 1944 without child or will, the land went to appellee, the mother, by operation of law.

According to one witness, whose testimony was not denied by any one, Thompson attempted, shortly before Dicie died, to have a deed, conveying this same land from Dicie to himself, drawn up and signed by mark and acknowledged, all in Dicie's complete absence and without her knowledge or consent. The witness said that Thompson's explanation for this irregular method of attempted procedure was that Dicie herself was unwilling to make the deed in the usual way. If that undenied testimony be true, then it must be inferred that Dicie wanted mother rather than husband to own this land after she crossed the bar. But whether she wanted it thus or otherwise, it was in that condition when she passed from time to eternity in 1944.

Upon the particular occasion now in controversy, four persons were present, namely, the old lady and Melodine Henson, a daughter-in-law, and Thompson and Ray Linn, a notary public. The two women relate one version of this incident. The two men relate a different version. According to the women, Thompson said that he needed to raise some money for an operation and therefore wanted the old lady to sign a paper, which no one described as a deed and which neither of the women recognized as a deed. The women relate that neither land nor real estate was ever mentioned on this occasion. The old lady relates that Thompson said, "I

need some money to go off and be operated on with and I brought this paper to get you to sign—hit won't cost you a cent and it will be a big help to me." On cross examination, Thompson admitted that on this occasion he did tell the old lady about needing an operation and about it not costing her a cent to sign the document. The operation, Thompson relates, was never performed. And while the signing of the document did not cost the old lady one cent, yet it is quite obvious that it cost her one farm.

None of the evidence of this case seems to have established for this transaction what the law calls a *quid pro quo* or consideration. Yet, a *quid pro quo* is the veritable mainspring of legal contract. Although Thompson received a good sized *quid,* 49 acres, it is difficult to see how the old lady received very much of a *quo,* especially since Thompson did not even have his operation.

We agree with appellant that the chancellor had before him in this case practically no legal evidence of any undue influence or mental incapacity upon which to base a judgment of cancellation of this deed. But, as we see this situation, he did have sufficient evidence of fraud upon which to base such a judgment. And it is undoubtedly true that a deed may be cancelled in a court of equity by reason of undue influence, mental incapacity, fraud—all of them or any of them.

This court has declared that even though it does not make a contract between parties nor set aside a contract on the sole ground of inadequate consideration, yet if the consideration was of such gross inadequacy as to make the contract unconscionable, a recission may be adjudged on very slight additional evidence of fraud. Anderson v. Anderson, 194 Ky. 763, 240 S. W. 1061.

We have also held that a gratuitous grantee of an aged and infirm parent must, when the transfer is assailed, show the good faith and fairness of the transaction and that the conveyance was for a valuable consideration and that the parent was possessed of sufficient mental capacity to enter into such a transaction and that the transfer was not obtained by undue influence, and if the gratuitous grantee fails to show these ele-

ments, the conveyance will be set aside. Huffaker v. Brammer, 193 Ky. 267, 235 S. W. 727.

While Thompson and the notary public both say that there was no misrepresentation on this occasion and that everything was sufficiently explained to the old lady, yet, as we have already pointed out, the two women gave an entirely different version tending to show that there was either a misrepresentation or a lack of sufficient explanation. The chancellor, who is always presumed to know the persons of a suit and to be in better position than the appellate court to glean the golden grain of truth from the empty stalks of fiction in any case, chose to accept the version of the women. But, regardless of which side stated the specific truth about this particular event, we do know with unwavering certainty (1) that the old lady got nothing when she parted with the farm and (2) that her timeworn mind was one of unlettered simplicity and (3) that the son-in-law never did have the projected operation and (4) that this complete episode arose like a summer shower out of a blue sky, that is, with neither a preliminary conference nor a previous discussion. Under all these circumstances, the chancellor was justified, we believe, in adjudging a cancellation of the deed in question.

Wherefore, the record of this case and the evidence tending to support the chancellor having been carefully considered without a determination of prejudicial error therein, we do now hereby affirm the judgment as rendered by the chancellor upon this trial.