**Gascon YATES et al., Appellants,**

v.

**Kathryn WILSON, Appellee.**

Court of Appeals of Kentucky.

Oct. 14, 1960.

Cass R. Walden, Joseph Martin, Edmonton, Richard L. Garnett, Glasgow, for appellants.

Robert M.. Coleman, Bowling Green, Robert L. Dowell, Edmonton, Morris Butler, Shuffett & Butler, Greensburg, for appellee.

PALMORE, Judge.

In this action, tried before a jury, the appellee, Kathryn Wilson, adopted daughter of Mrs. Betty Yates, succeeded in setting aside a deed by which Mrs. Yates purported to convey her real estate, a 151-acre farm and improvements thereon including a small grocery store building, to her only son, Gascon Yates, "and to his heirs of blood, that is his children or grandchildren at his death." The defendants, Gascon Yates and his children, appeal.

The deed in question was executed on February 3, 1948, and recorded in the Metcalfe County Court Clerk's office on February 7, 1948. Mrs. Yates died ten years later, on March 5, 1958, after having been ad-

judged mentally incompetent at an inquest on March 1, 1958. This suit was filed on March 6, 1958, and sought cancellation of the deed on the grounds of undue influence and mental incapacity of Mrs. Yates at the time it was executed. There being no evidence whatever of undue influence, the only issues submitted to the jury were the questions of mental capacity and ratification.

At the time of her death in March of 1958 Betty Yates was about 82 years old. For some 50 years she had operated a small country grocery on her place in the Gaskin community of Metcalfe County. Widowed in 1931, in that year she took Kathryn, a 4-year old orphan, into her home. Her only child, Gascon Yates, was then grown and living in Cincinnati, Ohio, where he has continued to reside ever since. Kathryn was legally adopted by Mrs. Yates in 1933 and continued to live in her home until 1946 or 1947. Kathryn worked in the store with her mother through the years, averaging "three or four days a week staying up there," until the end of 1955.

The deed in controversy was drafted by Joseph Martin, the present County Attorney of Metcalfe County, who had been well acquainted with Mrs. Yates for many years, having boarded at her home while teaching school in 1915. He testified that on February 2, 1948, he received by mail a note from Mrs. Yates asking him to prepare a deed to her son "and then on to her grandchildren." He drafted the deed on the same day, and February 2, 1948, is typewritten thereon as its date. However, he did not get out to see Mrs. Yates until the next evening, February 3, 1948, at which time the deed was executed and her acknowledgement taken by Mr. Martin as a Notary Public. The date typed in the notarial certificate was changed by pen and ink from February 2 to February 3. Mr. Martin says that when he arrived Mrs. Yates was sitting in a chair and had been sick but was in full possession of her faculties. On this occasion she gave him instructions to prepare a will for her, and he brought the will out and had it signed and witnessed on

the next day, February 4, 1948. The will was not introduced, but according to evidence elicited without objection it recited that the real estate had been conveyed to Gascon and his children and left the remainder of the estate one-third to Kathryn and one-third each to Gascon's two children. Mr. Martin testified that he had the deed recorded and then mailed it to Gascon and that he kept the will in his lock box until the death of Mrs. Yates, all pursuant to her instructions.

Though several points of interest have been raised and ably briefed by respective counsel, we have concluded that appellants were entitled to a judgment as a matter of law under the evidence. It is therefore unnecessary to consider the other questions, including those directed to the statutes of limitation and the reception of evidence in violation of KRS 421.210(2).

██ The "evidence necessary to set aside a deed on the grounds of incapacity must be strong and convincing." McCutcheon v. Bichon, 1937, 267 Ky. 694, 103 S.W.2d 76, 82. "The burden of proving the incapacity of a grantor or the undue influence of the grantee rests upon the party relying thereon, although the burden of going forward with the proof may shift upon evidence of the existence of a confidential relation[ship] between the parties." Nagle v. Wakefield's Adm'r, Ky. 1953, 263 S.W.2d 127, 128.

██ The question of burden of proof is of vital importance in determining whether a sufficient case has been made for submission to the jury, or upon which to support the findings of the trial court. In the present case it is our opinion that the burden was on the plaintiff for two reasons. First, the trial was conducted on that basis. A motion made by defendants at the beginning of the trial that they be assigned the burden of proof was overruled. We think it would be prejudicially unfair that the plaintiff enjoy the beneficial incidents of the burden during the trial of a case and then have the sufficiency of the evidence tested on the theory that the burden was on the defendant. Cf. Commonwealth of Kentucky, Department of Highways v. Farra, Ky., 338 S.W.2d 696. Secondly, we are of the opinion the relationship between the grantor and grantees under the facts of this case was not sufficient to cast upon the grantees the burden of proving the grantor's mental capacity.

Appellee cites from Thompson v. Henson, 1948, 307 Ky. 61, 209 S.W.2d 849, 851, the following statement: "We have also held that a gratuitous grantee of an aged and infirm parent must, when the transfer is assailed, show the good faith and fairness of the transaction and that the conveyance was for a valuable consideration and that the parent was possessed of sufficient mental capacity to enter into such a transaction and that the transfer was not obtained by undue influence * * *."

We have reviewed numerous decisions of this court, too many to cite here, in which the rule shifting the burden has been developed and applied. So much of the foregoing excerpt from Thompson v. Henson as indicates that a valuable consideration must be shown was probably included by inadvertence, since the lack or inadequacy of consideration is often one of the very circumstances that call the rule into effect. See, for example, the terminology of Huffaker v. Brammer, 1921, 193 Ky. 267, 235 S.W. 727, 729: "It is a rule in this jurisdiction that where a young, active, vigorous person obtains a conveyance from an old and infirm person, who is closely related to him by blood or marriage, or where there is a dependence of one upon the other, there being no sufficient valuable consideration, the burden of proof is upon such grantee to show the good faith of the transaction and that the grantor freely and voluntarily executed the instrument."

██ With respect to the burden of proof as to mental capacity, we do not find any authority, nor any logical reason, for shifting the burden of proof in the absence of circumstances from which fraud or undue

influence might reasonably be inferred. Gascon Yates did not live with his mother and she was not dependent on him. He did not procure the execution of the deed, was not present when it was prepared or signed, and, so far as the evidence shows, had not had the opportunity at any time recently before its execution to exercise any influence upon his mother. In fact, there is no evidence that he knew the conveyance was contemplated until he received it through the mail from the attorney who had prepared it for her. The attorney himself had not seen him for 10 or 15 years and had never received any correspondence from him. That he was the grantor's son and the conveyance was without consideration other than love and affection do not of themselves raise a suspicion of fraud or undue influence so as to provide a sound reason for shifting the burden of proof on the question of mental capacity.

After receiving, unsolicited, a deed to his mother's home, that Gascon Yates did not assert his dominion or otherwise seek to disturb her continued occupancy and control of the property during the remaining ten years of her life seems only natural; and in that situation the mother's continuing to exercise general possessory rights over the property is readily understandable. Nor can we agree with appellee that the conveyance made an unnatural disposition of the grantor's estate. It would not have been unusual or peculiar if she desired the property to remain in her blood line. Right or wrong, some people do feel that way. Perhaps she felt that she had fulfilled her obligations to the adopted daughter. Moreover, a grandmother's desire to secure an estate to her grandchildren certainly would not be abnormal. Under the circumstances of the case the whole subject of whether the disposition was natural or unnatural falls within the realm of stark speculation. It can scarcely be said, then, that the nature of the transaction itself raises a suspicion of fraud, undue influence, or even a lack of mental capacity and judgment.

We conclude that the burden of proof properly lay with the plaintiff. Cf. Mullins v. Mullins, Ky.1952, 247 S.W.2d 527.

There was ample evidence that in 1948 and throughout the remaining years until the last few months of her life Mrs. Yates was mentally competent and able to take care of business. This included the testimony of two sisters, one of whom lived in the neighborhood and saw her frequently and the other, a resident of Louisville who visited at Gaskin from time to time, had accompanied her on a 2-week trip in 1957 and remembered specifically Mrs. Yates's presence at a family reunion on February 10, 1948. There was also testimony by more than one witness that Mrs. Yates had in various ways indicated, after February of 1948, that she had conveyed the property and settled her affairs. In 1951 she signed an agreement allowing her fence to be set back in order to widen the road. In 1955 Kathryn Wilson and her husband themselves transacted with her the purchase of the store inventory and a lease of the building. Mrs. Yates personally took care of the insurance on the property and dealt with her insurance agent for that purpose within a year or so of her death. She made a sharecropping arrangement with a tenant in December of 1957. All of this we mention as a part of the perspective in which the probity and credibility of the plaintiff's evidence must be weighed. Cf. Wadkins' Adm'x v. Chesapeake & Ohio Railway Co., Ky.1956, 298 S.W.2d 7, 9.

The only medical testimony was given by Dr. E. S. Dunham, a physician who had treated Mrs. Yates from time to time including the last ten years of her life. Questioned as to whether at any time during this period she had the mental capacity to know the nature and extent of her property, the natural objects of her bounty, etc., he replied, "The answer would be part time yes and part time no." He was unable to say whether he had seen her at all during the year 1948, though Mrs. Wilson testified

that Mrs. Yates was under his care at the time the questioned deed was signed. His testimony was virtually worthless.

Both Kathryn Wilson and her husband testified that Mrs. Yates was very ill and bedfast for a period of several weeks embracing the occasion of her signing the deed and will. They were unable, however, to state the nature of the illness. From that time on until her death, they claim, Kathryn took care of all of her business for her. The explanation is that Mrs. Yates was unable to transact business for herself, but the only supporting facts given by them were that when people came into the store she would not wait on them, whereupon it would be necessary that Mrs. Wilson do so, and that she was deficient in making orders, figuring bills and making out checks.

Asked specifically who ran the store after Mrs. Yates's illness in 1948, Kathryn replied, "I done more of it than she did." Admittedly, however, there were times when Mrs. Yates had charge of the store by herself, and although Kathryn contends that she would make out lists for the drummers calling while she was away, there is no avoiding the fact that when Kathryn was not there Mrs. Yates had to take care of the customers. Her eyesight was failing, and some of the witnesses gave examples of errors in the making of change and handling of charge accounts. Nevertheless, if she was mentally incompetent to transact business it is rather strange that she was ever left to attend the store alone. The crowning blow to the credibility of the evidence of Kathryn and her husband is that they had no misgivings in dealing with her themselves in 1955 when they leased the store and bought the business. As to the rest, we do not regard the mistakes of a declining and forgetful old lady in the handling of store accounts and transactions as sufficient factual basis to give substance to lay opinions that she was incompetent to make a deed, particularly where the testimony is loosely directed, grapeshot fashion, at a target comprising the general period of ten years following its execution. See

Caldwell v. Hatcher, Ky.1952, 248 S.W. 892.

Three witnesses testified that they saw Mrs. Yates while she was sick in bed at her home on February 4, 1948, the day Mr. Martin, the attorney, was there, and that she did not know them. For this reason they were of the opinion that she did not have the capacity to contract at that time. Two of these witnesses were the sister and brother-in-law of the plaintiff's husband. In a matter so vital to the merits of a suit of this character it would seem elementary that the failure of a person sick in bed to recognize certain visitors cannot be given much weight in the absence of a showing that the opportunity of recognition was clear. For example, the court cannot assume that the room was well lighted, that the patient was fully conscious and able to see, or that the visit was of such duration and close quarters that a failure to recognize would be significant. Without these details to give it probative value the evidence is no more than a scintilla.

Several of the witnesses for the plaintiff were permitted, as we have indicated, to give their opinions as to the grantor's mental competency at the time of making the deed and thereafter. It was made clear through a series of incompetent but unchallenged questions on direct examination that these opinions proceeded largely from a belief that if Mrs. Yates had known what she was doing she would not have made such a conveyance without reserving a life estate, and would not have paid insurance premiums on a policy under which she would not be able to collect (as if she were aware of this nicety). Such opinions were therefore tainted by improper premises.

The courts in this jurisdiction have been liberal in allowing lay opinions, particularly as to testamentary capacity. "But the mere multiplication of unsupported opinions, based on isolated and disconnected facts without probative weight, adds nothing to the strength of a case. Something cannot be made out of nothing." Dossen-

bach v. Reidhar's Ex'x, 1932, 245 Ky. 449, 53 S.W.2d 731, 738 (sustaining, under the scintilla rule, a directed verdict in favor of the validity of a will, contra to adverse opinions by medical witnesses based on nonscientific observations). See also Mc-Cutcheon v. Bichon, 1937, 267 Ky. 694, 103 S.W.2d 76, 81, and Riddell v. Pace, Ky.1954, 271 S.W.2d 31, 34.

■ Mental weakness alone is not enough to justify the annulment of a deed, nor is the fact that the grantor's powers of mind and body were impaired by age. There must be strong and convincing evidence that the infirmity of mind was so great as to render him incapable of knowing or understanding the nature, meaning, and consequences of the transaction. Mc-Cutcheon v. Bichon, 1937, 267 Ky. 694, 103 S.W.2d 76, 82, and cases therein cited. The evidence in the case before us does not meet that test, from which it follows that the appellants were entitled to a directed verdict and, having been denied it, were entitled to a judgment n. o. v.

■ The point is made that since this is an equitable action the jury verdict could have been advisory only, whereupon the recitations in the judgment became in effect the findings of fact of the chancellor and cannot be set aside unless "clearly erroneous." CR 52.01. We do not understand, however, that this rule gives to the finding of a trial court, whether it be in equity or at common law, any greater status than the verdict of a jury in a common law action. There is no sound reason for a difference. If the findings of fact of a trial court are not sustained by sufficient evidence, under the same test of sufficiency that applies to a jury verdict, they are "clearly erroneous." Therefore, it makes no difference whether the factual issues of this case were determined by the jury or the judge.

The cause is reversed with directions that a judgment be entered dismissing the complaint.