**Clarence COLEMAN et al., Appellants,**

v.

**James W. GREER, Appellee.**

Court of Appeals of Kentucky.

Feb. 24, 1961.

V. R. Bentley, Pikeville, Ky., for appellants.

F. M. Burke, Fred Redwine, J. E. Sanders, J. A. Runyon, Pikeville, Ky., for appellee.

CULLEN, Commissioner.

On July 13, 1957, John Coleman, a childless widower 84 years of age, executed a deed conveying to James Greer a tract of land on which there was an eight-unit tourist camp or motel. The deed was without monetary consideration. However, at the same time the deed was executed Coleman also gave Greer a power of attorney, and according to Greer the agreement was that he was to handle Coleman's business affairs and that the rents from the motel property were to be devoted to the old man's needs during the remainder of his life. Greer had been raised in the Coleman home as a foster son but in 1945 he had married and established his own home and at the time the deed was executed he was employed in a bank in Pikeville.

Three months after the deed was executed Coleman brought this action to set the deed aside, on the ground of undue influence. (For reasons not here important a nephew, Clarence Coleman, joined in the suit as a plaintiff.) After the taking of the proof was completed and while the case was under submission Coleman died and the action was revived in the names of his heirs. The court (trying the case without a jury) entered judgment upholding the deed. The heirs have appealed.

John Coleman's testimony was simply that he did not sign or acknowledge any deed. However, his pleadings did not allege a forgery, nor was any direct attack made upon the notary's certificate of acknowledgment, which would be necessary under KRS 61.060 in order to claim a forgery.

The issue made by the pleadings was confined to the matter of undue influence. The plaintiffs offered no proof of undue in-

fluence. Their position is that this case comes within the "confidential relationship" category, where the circumstances are such as to create a presumption of undue influence and to place upon the grantee the burden of proving that the deed was freely and voluntarily made and the transaction was fair and equitable.

We have some doubts as to whether the doctrine of the "confidential relationship" cases is applicable where the grantor is alive and able to testify. However, be that as it may, it is our opinion that the circumstances of the instant case do not bring it within the "confidential relationship" class. For some twelve years Greer's contacts with Coleman had been limited to monthly social visits. He had not attempted to manage or interfere with the old man's affairs. He did not have him under custody or control. The evidence establishes that the idea of making the conveyance originated with Coleman and he called Greer to his home to explain his desires. The placing of Greer in charge of Coleman's affairs, with the understanding that the income would be devoted to Coleman's needs and that Greer would not have the beneficial ownership of the motel property until after Coleman's death was a reasonable thing to do in view of Coleman's advanced age and poor physical condition and the relationship that had existed between them during Greer's youth. There was no effort at concealment; Coleman's housekeeper, who had been hired by one of his nephews, was present when the deed was executed, and the deed was recorded promptly. While the effect of the deed was to deprive Coleman's nephews and nieces of some property that they otherwise might have inherited, the evidence does not show that they occupied such a close personal relationship with the old man as to be the natural objects of his bounty to the exclusion of his foster son. Actually, the only circumstance to which appellants can point is that

Coleman was old, feeble and subject to some mental infirmities, and it has never been held that this circumstance alone is enough to raise a presumption of undue influence.

In Caldwell v. Hatcher, Ky., 248 S.W.2d 892, circumstances stronger than those here were held insufficient to create a presumption of undue influence. See also Yates v. Wilson, Ky., 339 S.W.2d 458.

 It is our opinion that under the circumstances of this case the plaintiffs had the burden of proving undue influence, and they having failed to sustain that burden the trial court correctly ruled against their claim.

Although the pleadings alleged only undue influence the proof went into the question of lack of mental capacity, and there having been no objection raised we will treat the case as if the issue of lack of mental capacity had been made by the pleadings. CR 15.02.

It will be sufficient to say that the evidence for the plaintiffs not only did not establish lack of mental capacity as a matter of law, but it is doubtful whether it would have sustained a finding of lack of mental capacity. See Yates v. Wilson, Ky., 339 S.W.2d 458. There was no medical proof; Coleman himself of course did not claim to be mentally incapacitated; and the nephew Clarence Coleman who was the prime instigator of the lawsuit did not testify that the old man was mentally incompetent (and he was not in a position to do so because he himself was carrying on business transactions with the old man at the time in question). Actually, the plaintiffs' evidence showed little more than periods of forgetfulness and a poor memory, plus some delusions about oil wells in the neighborhood. The finding of the trial court that Coleman had sufficient mental capacity was clearly warranted.

The judgment is affirmed.